Exhibit 1

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI DADE COUNTY, FLORIDA

IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY,

        Plaintiff,

v.

NANCY MORALES, AND WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES,

        Defendants.

_____/

Case No.:

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, by and through their undersigned counsel, pursuant to Chapter 86, Florida Statutes, files this Complaint for Declaratory Judgment seeking this Court's declaratory judgment and relief against the Defendant, NANCY MORALES and WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, and as grounds therefore would state:

1.    This is an action for Declaratory Judgment pursuant to Chapter 86, Florida Statutes. The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY requests that this Honorable Court rule that the policy of insurance issued to the Defendant, NANCY MORALES, bearing policy # XXXXXX8728, is rescinded and is void *ab initio*.

### Jurisdiction and Venue

2.    This is an Action for Declaratory Judgment and is otherwise within the jurisdiction of this Court. The amount of the total claim exposure is in excess of thirty thousand ($30,000.00) dollars, including but not limited to adjusting costs, investigative costs, exposure under the subject insurance policy, and attorney's fees and costs.

3.    Venue is proper in Miami-Dade County, Florida.

### Parties

4.      The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, is a duly licensed insurance company authorized to conduct business in the State of Florida and Miami-Dade County.

5.      At all times material to this action, NANCY MORALES is and was a Florida citizen residing in Miami-Dade County, Florida.

6.      At all times material to this action, WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES (hereinafter referred to as "WESTLAKE FINANCIAL") is a Foreign Limited Liability Corporation authorized to conduct business in the State of Florida and was NANCY MORALES' lienholder with respect to a retail installment sales contract executed by NANCY MORALES to finance the purchase of the motor vehicle involved on the January 26, 2022 date of loss.

**Facts**

7.      The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, issued a policy of insurance, bearing policy # XXXXXX8728, to the Defendant, NANCY MORALES, with effective dates from May 23, 2020 through May 23, 2021; which was subsequently renewed May 23, 2021 through May 23, 2022. (See the Declarations Page and the policy of insurance, attached hereto as **Exhibit "A" and Exhibit "B"**).

8.      The policy of insurance provided the following coverages to NANCY MORALES for a 2019 Infinite Q60, VIN# JN1FV7EL8KM440652: property damage liability insurance coverage, personal injury protection benefits, comprehensive coverage (listed as "other than collision"), and collision coverage. (See **Exhibit "A"**).

9.      The policy of insurance issued by Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, does not provide any bodily injury liability insurance coverage. (See **Exhibit "A"**).

10.     The policy of insurance bearing policy # XXXXXX8728, described herein was in full force and effect on the date of the subject motor vehicle theft.

11.     On or about January 26, 2022, the insured 2019 Infinite Q60, (VIN: JN1FV7EL8KM440652), was stolen.

12.     As a result of the January 26, 2022 motor vehicle theft, Defendant, NANCY MORALES, the owner of the Insured 2019 Infinite Q60 (VIN: JN1FV7EL8KM440652), has a claim for comprehensive coverage against the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY.

13.     As a result of the January 26, 2022, motor vehicle theft, Defendant, WESTLAKE FINANCIAL, the lienholder of the insured 2019 Infinite Q60, (VIN: JN1FV7EL8KM440652), has a claim for comprehensive coverage against the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY.

14.     On or about May 23, 2020, Defendant, NANCY MORALES completed an application for insurance with the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY. The application for insurance dated May 23, 2020 is a contract entered between NANCY MORALES and IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY.

15.     Once Defendant, NANCY MORALES completed the application for insurance, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY relied upon the representations made by NANCY MORALES and issued a contract for insurance.

16.     During the investigation of the facts and circumstances surrounding the motor vehicle theft, it was determined that NANCY MORALES made material misrepresentations on the application for insurance, thereby breaching the contract for insurance.

17.     At all times material to this action, NANCY MORALES made material misrepresentations on the application for insurance, which occurred prior to the alleged assignment of any personal injury protection ("PIP") benefits to any medical provider, doctor and/or medical entity.

18.    In particular, on the application for insurance dated May 23, 2020, Defendant, NANCY MORALES, failed to disclose that additional residents over the age of 14 lived within her household at the time of the application for insurance. (See the Application for Insurance dated May 23, 2020, attached hereto as **Exhibit "C"**).

19.    Specifically, on the application for insurance dated May 23, 2020, Defendant, NANCY MORALES failed to disclose that Janet Lopez-Lanuza Morales (daughter) and Marsell Brito Morales (son) resided with NANCY MORALES.

20.    On the application for insurance dated May 23, 2020, Defendant, NANCY MORALES was required to disclose:

"List all persons living in your household who are at least 14 years of age."

See **Exhibit "C"**.

21.    On the application for insurance dated May 23, 2020, Defendant, NANCY MORALES, answered "No" to the following application question, which provides:

"Have you failed to disclose any household residents, whether licensed or not, including but not limited to children/stepchildren or dependents who may reside temporarily elsewhere?

See **Exhibit "C"**.

22.    On the application for insurance dated May 23, 2020, Defendant, NANCY MORALES signed the Applicant Statement which provides:

"I agree all answers to all questions I this Application are true and correct. I understand, recognize, and agree said answers are given and made for the purpose of inducing the Company to issue the Policy for which I have applied. I further agree that ALL persons 14 years of age or older who live with me, as well as ALL operators who regularly operate my vehicle and do not reside in my household, are shown above… I understand the Company may rescind this Policy if said answers on this Application are false or misleading, and materially affect the risk the Company assumes by issuing the Policy."

See **Exhibit "C"**.

23.     Moreover, on the application for insurance dated May 23, 2020, Defendant, NANCY MORALES listed Janet Lopez-Lanuza Morales (daughter) and Marsell Brito Morales (son) on the Driver Statement form which provides:

> "I agree that the persons listed below of eligible driving or permit age do not reside in my household nor have access to drive the vehicles insured on my policy. I understand that the Company may declare no coverage will be provided if said answers are false or misleading, and materially affect the risk the Company assumes by issuing this policy."

See **Exhibit "C"**.

24.     By failing to disclose Janet Lopez-Lanuza Morales (daughter) and Marsell Brito Morales (son) as additional household residents over the age of 14 on the application for insurance dated May 23, 2020, Defendant, NANCY MORALES made material misrepresentations with the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY on the application for insurance dated May 23, 2020.

25.     Had NANCY MORALES disclosed Janet Lopez-Lanuza Morales (daughter) and Marsell Brito Morales (son) as additional household residents over the age of 14 at the time of the application for insurance dated May 23, 2020, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY would not have issued the policy at the same premium rate. Specifically, this would have resulted in an increase to the policy premium.

26.     NANCY MORALES' omission of facts relating to the additional household resident over the age of 14, and her misrepresentation by certifying that all disclosures concerning the additional resident over the age of 14 in her household had been made, is a material misrepresentation on the application for insurance dated May 23, 2020.

27.     As NANCY MORALES made a material misrepresentation on the application for insurance dated May 23, 2020, which would have resulted in an increase to the policy premiums had the true facts been disclosed, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY is not responsible for providing insurance coverage pursuant to Florida Statute §627.409.

28. Pursuant to the policy of insurance issued to NANCY MORALES, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY may void the insurance policy as follows:

**1. Voiding for Fraud or Misrepresentation**

Because **we** rely on the information provided by or for **you** on **your application** when **we** agree to issue a policy to **you**, **we** have the right to void this policy from its inception if **we** learn that **you** or **your** representative, at the time of the **application**

    a. Made incorrect statements or representations to **us** as to any material fact of circumstance;

    b. Concealed or misrepresented any material fact or circumstance; or

    c. Engaged in fraudulent conduct.

No coverage is provided for any **accident** or **loss** if **we** void this policy.

See Page 34 of **Exhibit "B"**.

29. Further, Florida Statute §627.409(1) provides:

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), *a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply*:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b) *If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith* would not have issued the policy or contract, *would not have issued it at the same premium rate*, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(*emphasis added*).

30. As a result of the material misrepresentations and breach of the contract for insurance committed by NANCY MORALES, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY has rescinded the insurance policy, bearing policy # XXXXXX8728, issued to NANCY MORALES and has declared the policy void ab initio in accordance with Florida Statute §627.409.

31.    In accordance with Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY's rescission of the policy and declaring the policy void ab initio, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY has issued a full refund of insurance premiums paid by Defendant, NANCY MORALES for the policy of insurance.

32.    Additionally, in accordance with Plaintiff's rescission of the policy and declaring the policy void ab initio, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY notified the Defendant, NANCY MORALES of the material misrepresentations and of the rescission of the policy. (See Notices of Recession dated April 22, 2022, attached hereto as **Exhibit "D"**.)

33.    The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, as required by Rule 69O-167.002 of the Florida Administrative Code, provided notice to the Florida Department of Insurance, Office of Insurance Regulations of the rescission of the insurance policy.

34.    As a result of NANCY MORALES' breach of the contract for insurance, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY asserts that there is no insurance coverage for the January 26, 2022 motor vehicle theft since the insured, NANCY MORALES, made material misrepresentations on the application for insurance, and misrepresented facts in the procurement of the insurance coverage as set forth therein.

35.    Nonetheless, multiple claims have been presented against the subject insurance policy. Therefore, there exists a present, ascertained, or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY under the subject insurance policy.

36.    IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, the Defendants and the claimants have an actual, present, adverse, and antagonistic interest in the subject matter described herein. All proper and present and antagonistic interests are before the court by proper process. The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, is in doubt with respect to its rights under the automobile policy and by this Complaint seeks a declaration of

its rights and obligations under the automobile policy with respect to the claims asserted against IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY. The Plaintiff is not seeking legal advice or an advisory opinion.

37.     All conditions precedent to the bringing of this action have occurred and Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY is entitled to the relief sought herein.

**Count I – Declaratory Relief**
**Material Misrepresentation – Rescission**
**As Per Florida Statute § 627.409**

38.     The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, incorporates by reference paragraphs 1 through 37, as if fully alleged herein.

39.     Florida Statute § 627.409(1) provides,

(1)   Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), *a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply*:

(a)   The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b)   *If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith* would not have issued the policy or contract, *would not have issued it at the same premium rate*, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(emphasis added).

40.     By failing to disclose Janet Lopez-Lanuza Morales (daughter) and Marsell Brito Morales (son) as additional household residents over the age of 14 on the application for insurance dated May 23, 2020, Defendant, NANCY MORALES made material misrepresentations with the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY on the application for insurance dated May 23, 2020.

41.     Had NANCY MORALES disclosed Janet Lopez-Lanuza Morales (daughter) Marsell Brito Morales (son) as additional household residents over the age of 14 at the time of

the application for insurance dated May 23, 2020, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY would not have issued the policy at the same premium rate. Specifically, this would have resulted in an increase to the policy premium.

42.    NANCY MORALES' omission of facts relating to the additional household residents over the age of 14, and her misrepresentation by certifying that all disclosures concerning the additional resident over the age of 14 in her household had been made, is a material misrepresentation on the application for insurance dated May 23, 2020.

43.    As NANCY MORALES made a material misrepresentation on the application for insurance dated May 23, 2020, which would have resulted in an increase to the policy premiums had the true facts been disclosed, Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY is not responsible for providing insurance coverage pursuant to Florida Statute §627.409.

44.    Pursuant to Florida Statute § 627.409(1), an insurer is not responsible for coverage where a material misrepresentation has been made on the application for insurance.

45.    Therefore, at this time, there exists a bona fide dispute with the Defendants regarding whether Defendants, NANCY MORALES and WESTLAKE FINANCIAL  are covered under the policy of insurance; and therefore, entitled to the coverages provided by the policy of insurance.

46.    Notwithstanding the subject policy rescission, the Plaintiff anticipates that the Defendant herein and claimant will file and/or has filed multiple lawsuits (including first and third-party claims) against the insured Defendant, NANCY MORALES and/or the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY seeking benefits under the subject policy or seek a defense or indemnification from IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY. Therefore, there is a dispute with the Defendants herein as to the legal ramifications regarding the subject policy rescission.

47.     The Plaintiff anticipates that the insured Defendant, NANCY MORALES will demand a defense or to be indemnified under the policy of insurance for claims and injuries sustained in the January 26, 2022 motor vehicle theft under policy # XXXXXX8728. Therefore, to avoid occurring unnecessary and excessive attorneys' fees and costs in providing a defense or indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

48.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the named insured, NANCY MORALES for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

49.     Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, WESTLAKE FINANCIAL, for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

50.     Based on the rescission of the subject insurance policy, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, NANCY MORALES, for any claims made under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

51.     Based on the rescission of the subject insurance policy, the Defendant, NANCY MORALES, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft.

52.     Based on the rescission of the subject insurance policy, the Defendant, WESTLAKE FINANCIAL, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft.

53.    Based on the rescission of the subject insurance policy, there is no insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX5745.

54.    Based on the rescission of the subject insurance policy, there is no property damage liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

55.    Based on the rescission of the subject insurance policy, there is no personal injury protection ("PIP") benefits for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

56.    Based on the rescission of the subject insurance policy, there is no comprehensive coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

57.    Based on the rescission of the subject insurance policy, there is no collision coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

58.    Notwithstanding the rescission of the subject insurance policy, there is no bodily injury liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

59.    The IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX8728, is rescinded and is void ab initio.

60.     Florida Statute § 86.21 states in pertinent part:

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

61.     Chapter 86, Florida Statutes, explains that the purpose of a declaratory judgment "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101 (2007). There is almost no limit to the number and types of cases that may be heard under Chapter 86, if the following requirements are met: (1) there is a bona fide, actual, present need for the declaration; (2) the declaration deals with a present or ascertainable controversy; (3) there is a person who has or reasonably may have an actual, present, adverse interest in the subject matter; and (4) the relief sought is not merely the giving of legal advice by the court.  May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

62.     "When a party seeks declaratory judgment as to coverage under an insurance policy, it is functionally seeking the court's construction as to the rights and liabilities of the parties under a contract."  State Farm Mut. Auto. Ins. Co. v. Hinestrosa, 614 So. 2d 633, 635 (Fla. 4th DCA 1993) (trial court erred in dismissing insurance company's pleading seeking declaratory judgment because even if coverage did exist contrary to the insurance company's position, it was still entitled to a declaration by judgment on the coverage issue); see N.H. Indem. Ins. Co. v. Zaniboni, 13 Fla. L. Weekly Supp. 573a (Fla. 18th Cir. Ct. Nov. 18, 2005) (rejecting insurance company's argument that demand letter was required for declaratory relief action).

63.     An insurer's duty to defend depends solely on the allegations of the complaint against the insured. See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580

(11th Cir. 1995). See also *Philadelphia Indemn. Ins. Co. v. Yachtman's Inn Condo. Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("When a Florida court makes a determination as to whether an insurer's duty to defend the insured exists, it must look to the allegations contained within the four corners of the complaint in the underlying action against the insured."). "The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify." *Nova Cas. Co. v. Wasterstein*, 424 F. Supp. 2s 1325, 1332 (S.D. Fla. 2006).

64.    Based upon this dispute, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, seeks a declaration of its rights and obligations under the statute with respect to the misrepresentations made by NANCY MORALES on the application for insurance.

65.    There exists an actual and present need for a declaration of rights under the policy of insurance and the personal injury damages and/or property damage liability damages alleged.

WHEREFORE, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, requests that this Honorable Court rule that:

a.  The Defendant, NANCY MORALES, failed to disclose that additional residents over the age of 15 lived within her household at the time of the application for insurance, which occurred prior to the assignment of any benefits under the policy of insurance, bearing policy #XXXXXX8728, issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY;

b.  There is no insurance coverage for the named insured, NANCY MORALES for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

c.  There is no insurance coverage for the Defendant, WESTLAKE FINANCIAL, for any comprehensive coverage under the policy of

insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

d. The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, NANCY MORALES, for any claims made under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

e. The Defendant, NANCY MORALES, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft;

f. The Defendant, WESTLAKE FINANCIAL, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft;

g. There is no insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX5745;

h. There is no property damage liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

i. There is no personal injury protection ("PIP") benefits for the motor vehicle theft which occurred on January 26, 2022, under the policy of

insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

j.   There is no comprehensive coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

k.   There is no collision coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

l.   Notwithstanding the rescission of the subject insurance policy, there is no bodily injury liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

m.   The IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX8728, is rescinded and is void ab initio.

### Count II – Declaratory Relief Material Misrepresentation- Rescission As Per Insurance Policy

66.   The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, incorporates by reference paragraphs 1 through 37, as if fully alleged herein.

67.   Pursuant to the policy of insurance issued to NANCY MORALES, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY may void the insurance policy as follows:

### 1. Voiding for Fraud or Misrepresentation

Because **we** rely on the information provided by or for **you** on **your application** when **we** agree to issue a policy to **you**, **we** have the right to void this policy from its inception if **we** learn that **you** or **your** representative, at the time of the **application**

        d. Made incorrect statements or representations to **us** as to any material fact of circumstance;

        e. Concealed or misrepresented any material fact or circumstance; or

        f. Engaged in fraudulent conduct.

No coverage is provided for any **accident** or **loss** if **we** void this policy.

See Page 34 of Exhibit "B".

68.    Pursuant to the insurance policy, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY may void the policy based on material misrepresentation or fraud.

69.    Therefore, at this time, there exists a bona fide dispute with the Defendants regarding whether Defendants, NANCY MORALES and WESTLAKE FINANCIAL are covered under the policy of insurance; and therefore, entitled to the coverages provided by the policy of insurance.

70.    Notwithstanding the subject policy rescission, the Plaintiff anticipates that the Defendant herein and claimant will file and/or has filed multiple lawsuits (including first and third-party claims) against the insured Defendant, NANCY MORALES and/or the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY seeking benefits under the subject policy or seek a defense or indemnification from IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY. Therefore, there is a dispute with the Defendants herein as to the legal ramifications regarding the subject policy rescission.

71.    The Plaintiff anticipates that the insured Defendant, NANCY MORALES will demand a defense or to be indemnified under the policy of insurance for claims and injuries sustained in the January 26, 2022 motor vehicle theft under policy # XXXXXX8728. Therefore, to avoid occurring unnecessary and excessive attorneys' fees and costs in providing a defense or

indemnification where there was a material misrepresentation as described herein, the Plaintiff asks for the Court to declare the rights and obligations of the parties.

72. Based on the rescission of the subject insurance policy, there is no insurance coverage for the named insured, NANCY MORALES for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

73. Based on the rescission of the subject insurance policy, there is no insurance coverage for the Defendant, WESTLAKE FINANCIAL, for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

74. Based on the rescission of the subject insurance policy, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, NANCY MORALES, for any claims made under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

75. Based on the rescission of the subject insurance policy, the Defendant, NANCY MORALES, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft.

76. Based on the rescission of the subject insurance policy, the Defendant, WESTLAKE FINANCIAL, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft.

77. Based on the rescission of the subject insurance policy, there is no insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX5745.

78.    Based on the rescission of the subject insurance policy, there is no property damage liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

79.    Based on the rescission of the subject insurance policy, there is no personal injury protection ("PIP") benefits for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

80.    Based on the rescission of the subject insurance policy, there is no comprehensive coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

81.    Based on the rescission of the subject insurance policy, there is no collision coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

82.    Notwithstanding the rescission of the subject insurance policy, there is no bodily injury liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728.

83.    The IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX8728, is rescinded and is void ab initio.

84.    Florida Statute § 86.21 states in pertinent part:

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or

instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

85. Chapter 86, Florida Statutes, explains that the purpose of a declaratory judgment "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101 (2007). There is almost no limit to the number and types of cases that may be heard under Chapter 86, if the following requirements are met: (1) there is a bona fide, actual, present need for the declaration; (2) the declaration deals with a present or ascertainable controversy; (3) there is a person who has or reasonably may have an actual, present, adverse interest in the subject matter; and (4) the relief sought is not merely the giving of legal advice by the court.  May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

86. "When a party seeks declaratory judgment as to coverage under an insurance policy, it is functionally seeking the court's construction as to the rights and liabilities of the parties under a contract."  State Farm Mut. Auto. Ins. Co. v. Hinestrosa, 614 So. 2d 633, 635 (Fla. 4th DCA 1993) (trial court erred in dismissing insurance company's pleading seeking declaratory judgment because even if coverage did exist contrary to the insurance company's position, it was still entitled to a declaration by judgment on the coverage issue); see N.H. Indem. Ins. Co. v. Zaniboni, 13 Fla. L. Weekly Supp. 573a (Fla. 18th Cir. Ct. Nov. 18, 2005) (rejecting insurance company's argument that demand letter was required for declaratory relief action).

87. An insurer's duty to defend depends solely on the allegations of the complaint against the insured. See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995). See also Philadelphia Indemn. Ins. Co. v. Yachtman's Inn Condo. Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("When a Florida court makes a determination as to whether an insurer's duty to defend the insured exists, it must look to the allegations contained within the four corners of the complaint in the underlying action against the insured."). "The duty

to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify."  Nova Cas. Co. v. Wasterstein, 424 F. Supp. 2s 1325, 1332 (S.D. Fla. 2006).

88.    Based upon this dispute, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, seeks a declaration of its rights and obligations under the statute with respect to the misrepresentations made by NANCY MORALES on the application for insurance.

89.    There exists an actual and present need for a declaration of rights under the policy of insurance and the personal injury damages and/or property damage liability damages alleged.

WHEREFORE, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, requests that this Honorable Court rule that:

a.    The Defendant, NANCY MORALES, failed to disclose that additional residents over the age of 15 lived within her household at the time of the application for insurance, which occurred prior to the assignment of any benefits under the policy of insurance, bearing policy #XXXXXX8728, issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY;

b.    There is no insurance coverage for the named insured, NANCY MORALES for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

c.    There is no insurance coverage for the Defendant, WESTLAKE FINANCIAL, for any comprehensive coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

d.    The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, has no duty to defend and/or indemnify the insured, NANCY MORALES, for any claims made under the policy of insurance issued by

IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

e.  The Defendant, NANCY MORALES, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft;

f.  The Defendant, WESTLAKE FINANCIAL, is excluded from any insurance coverage under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX8728, for the January 26, 2022 theft;

g.  There is no insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, bearing policy # XXXXXX5745;

h.  There is no property damage liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

i.  There is no personal injury protection ("PIP") benefits for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

j.  There is no comprehensive coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by

IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

k. There is no collision coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

l. Notwithstanding the rescission of the subject insurance policy, there is no bodily injury liability insurance coverage for the motor vehicle theft which occurred on January 26, 2022, under the policy of insurance issued by IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, under policy # XXXXXX8728;

m. The IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY Policy of Insurance, bearing policy # XXXXXX8728, is rescinded and is void ab initio.

### Count III – Alternative Count
### Unjust Enrichment – Repayment of Insurance Premium Refund

90. The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, incorporates by reference paragraphs 1 through 37, as if fully alleged herein.

91. The Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, pleads this count in the alternative should the Court find that the subject insurance policy provides coverage. Then, the insurance company, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, demands reimbursement of the refunded insurance premium paid to the insured Defendant, NANCY MORALES, plus investigative costs, adjusting costs and attorney's fees and costs.

92.     Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY has issued a refund of insurance premiums paid by Defendant, NANCY MORALES for policy periods May 23, 2020 through May 23, 2021 and May 23, 2021 through May 23, 2022.

93.     Therefore, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, has conferred a benefit on the Defendant, NANCY MORALES, who has knowledge thereof.

94.     The Defendant, NANCY MORALES, voluntary accepted and retained the benefit conferred by cashing the premium refund check. Thus, the circumstances render the Defendant's retention of the benefit inequitable unless the Defendant pays to the Plaintiff the value of the benefit (premium refund check)

95.     If the Court finds that the subject insurance policy provides coverage, then the Defendant, NANCY MORALES, has been unjustly enriched by retaining the amount of the premium refund, and should be required to pay the Plaintiff the amount of the premium refund, plus investigative costs, adjusting costs and attorney's fees and costs.

WHEREFORE, the Plaintiff, IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, sues the Defendant, NANCY MORALES, for the recovery of the insurance benefits previously paid during the policy term as set forth above, plus costs, interest, and attorney's fees.

Dated this 5th day of November 2022.

McFARLANE LAW
Attorneys for Plaintiff
210 N. University Drive, 6th Floor
Coral Springs, Florida 33071
(954) 340-0005 Telephone
(954) 340-0055 Facsimile
PLEADING SERVICE E-MAIL ADDRESS:
pleadingservice@mcfarlanedolanlaw.com

By:  /s/ William J. McFarlane, III, Esquire
          WILLIAM J. McFARLANE, ESQUIRE
          Florida Bar No: 768601

| #1 | Anti-theft Discount |
| **Driver Level** | |
| #1 | Good Driver Discount |

## Important Notice

Florida law requires you to have **Personal Injury Protection** coverage & **Property Damage Liability** coverage.
**READ YOUR POLICY CAREFULLY. NO COVERAGE IS AFFORDED UNDER THIS POLICY FOR BODILY INJURY LIABILITY, OR UNINSURED MOTORISTS PROTECTION.**
**THIS POLICY DOES NOT SATISFY ANY FINANCIAL RESPONSIBILITY LAW. THIS IS A RESTRICTED POLICY**.

Online Policy Documents: Your policy form and coverage endorsements may be viewed by going to our website:www.MyNatGenPolicy.com. Click on the Policy Documents link at the top and enter your Policy Number and Last Name.

## Additional Policy Information

Insured Email:

## Disclosure of Possible Additional Charges

The amounts below are authorized for use in this state. However, they are only charged if they apply to your policy.

| | |
| --- | --- |
| FR Filing Charge | $25.00 |
| Late Charge | $10.00 |
| Nonsufficient Funds Charge | $15.00 |
| Reinstatement Charge | $10.00 |

## Forms and Endorsements

| Endorsement | Edition | Form Name |
| --- | --- | --- |
| 11496 | 05012015 | PERSONAL AUTO POLICY |

**Authorized Signature**



Serviced by RAC Insurance  Partners, LLC
6161 Blue Lagoon Drive Suite 300 • Miami FL 33126

NANCY MORALES
3620 NW 169TH TER
MIAMI GARDENS FL  33056-4125

| | |
|---|---|
| Policy Number: | Date of Notice |
| **8728** | **03/31/2021 1:23 AM** |
| Named Insured: | |
| **Nancy Morales** | |
| Policy Period | |
| **5/23/2021 - 5/23/2022** | |
| Policy Underwritten By: | |
| **Imperial Fire & Casualty Insurance Company** | |

**24 Hour Claim Reporting:  1 -888-874-5221**
**For Policy Information: 786-581-3246**
**www.MyNatGenPolicy.com**

Your Agent :  9005058
Univista Insurance
7330 NW 8th St
Miami FL 33126
(305) 508-9575

# FL PERSONAL AUTO DECLARATIONS PAGE

Renewal Effective 5/23/2021 12:01 AM At the address of the Named Insured
These declarations specify the coverages included in your policy and form a part of your policy.

## IMPERIAL FIRE & CASUALTY INSURANCE COMPANY

### Drivers and Household Residents

| #1 | Nancy Morales | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Driver Status** | **License #** | **Lic. State** | **Date of Birth** | **Gender** | **Marital Status** | **Driver Pts** | **Yrs. Licensed** |
| | Rated Driver | | FL | | Female | Single | 0 | 14 |

### Insured Vehicle(s) and Schedule of Coverages

| #1 2019 INFI Q60 RED | **VIN:** | **Usage:** | |
|---|---|---|---|
| | JN1FV7EL8KM440652-EFB3B0 | Pleasure/Commute | |
| Garaging Location: | 33056-4125 - 0 | | |
| **Loss Payee** | **Address** | | |
| West Lake Financial | 4751 Wilshire Blvd Suite 100, Los Angeles CA 90010 | | |
| **Coverages Provided** | **Limits / Deductibles** | | **Premium** |
| Property Damage | $10,000 Each Accident | | $354.00 |
| Personal Injury Protection | $10,000, $1,000 Deductible Per Occurrence - Named Insured and Resident Relatives, Exclusion of Work Loss Benefit - Named Insured and Resident Relatives | | $640.00 |
| Other Than Collision | $1,000 Deductible | | $241.00 |
| Collision | $1,000 Deductible | | $1,023.00 |
| | **Total For This Vehicle** | | **$2,258.00** |

| | |
|---|---|
| **Combined Vehicle Premium** | **$2,258.00** |
| Installment Underwriting Fee | $10.00 |
| Policy Fee | $25.00 |
| **Total Premium + Fees** | **$2,293.00** |

### Discounts Applied

**Policy Level**

AutoPay
Credit Zip Match Discount
New Business Discount
Paperless Discount

**Vehicle Level**

10040FL (01012015)

1 of 2

| #1 | Airbag Discount |
| #1 | Anti-lock Brakes Discount |
| #1 | Anti-theft Discount |
| **Driver Level** | |
| #1 | Good Driver Discount |

## Important Notice

Florida law requires you to have **Personal Injury Protection** coverage & **Property Damage Liability** coverage.
**READ YOUR POLICY CAREFULLY. NO COVERAGE IS AFFORDED UNDER THIS POLICY FOR BODILY INJURY LIABILITY, OR UNINSURED MOTORISTS PROTECTION.**
**THIS POLICY DOES NOT SATISFY ANY FINANCIAL RESPONSIBILITY LAW. THIS IS A RESTRICTED POLICY**.

Online Policy Documents: Your policy form and coverage endorsements may be viewed by going to our website:www.MyNatGenPolicy.com. Click on the Policy Documents link at the top and enter your Policy Number and Last Name.

## Additional Policy Information

Insured Email:

## Disclosure of Possible Additional Charges

The amounts below are authorized for use in this state. However, they are only charged if they apply to your policy.

| | |
| --- | --- |
| FR Filing Charge | $25.00 |
| Late Charge | $10.00 |
| Nonsufficient Funds Charge | $15.00 |
| Reinstatement Charge | $10.00 |

## Forms and Endorsements

| Endorsement | Edition | Form Name |
| --- | --- | --- |
| 11496 | 05012015 | PERSONAL AUTO POLICY |

*Beta A Costello*

_____
**Authorized Signature**

# Florida
# Personal Automobile Policy

5630 University Parkway ● PO Box 3199
Winston-Salem NC 27102-3199

Imperial Fire and Casualty

Exhibit"B"

# FLORIDA PERSONAL AUTOMOBILE POLICY

**PLEASE READ YOUR AUTO POLICY:** It is part of a legal contract between the Policyholder and **us**. Its terms include a description of **your** coverage as well as limits, exclusions and other conditions. If **you**:

- have questions about **your** policy or coverage;
- need to make changes;
- want to get help with resolving a complaint; or
- have any other issue(s);

contact **us** at **(305) 260-3600** or contact **your** agent.

**IN THE EVENT OF A MOTOR VEHICLE ACCIDENT:**

Contact **us** as soon as possible at **1 (888) 874-5221**, or contact **your** agent. Please read **your** policy for other important duties after any **accident** or **loss**.

**NOTICE: THIS POLICY LIMITS REIMBURSEMENT OF MEDICAL BENEFITS.**

## Table of Contents

| | |
|---|---|
| **AGREEMENT** ...........................................................1 | **PART III – MEDICAL PAYMENTS COVERAGE** ...........................................................18 |
| **DUTIES - WHAT TO DO IN CASE OF A MOTOR VEHICLE ACCIDENT OR LOSS** ....................1 | Insuring Agreement...................................................... 18 |
| **POLICY DEFINITIONS** ...........................................2 | Additional Definitions .................................................. 18 |
| **Part I – Liability to Others Coverage** ....................5 | Exclusions ................................................................... 20 |
| Insuring Agreement.......................................................5 | Limits of Liability......................................................... 21 |
| Additional Payments .....................................................6 | Other Insurance........................................................... 23 |
| Additional Definitions ...................................................6 | Legal Action Against Us............................................... 23 |
| Exclusions .....................................................................6 | **PART IV- DAMAGE TO YOUR AUTO COVERAGE** ...........................................................23 |
| Limits of Liability...........................................................7 | Insuring Agreements.................................................... 23 |
| Other Insurance ...........................................................8 | Collision Coverage .............................................. 23 |
| Financial Responsibility Laws ......................................8 | Comprehensive Coverage .................................. 23 |
| Out-of-State Coverage ..................................................8 | Additional Definitions .................................................. 24 |
| **PART II – PERSONAL INJURY PROTECTION ("PIP")** ...........................................................8 | Exclusions ................................................................... 25 |
| Insuring Agreement.......................................................9 | Limits of Liability......................................................... 26 |
| Additional Definitions....................................................9 | Settlement of Loss ...................................................... 26 |
| Exclusions ................................................................... 12 | Other Insurance and Sources of Recovery ................. 27 |
| Limits of Liability ......................................................... 13 | No Benefit to Bailee .................................................... 27 |
| Other Insurance .......................................................... 15 | Loss Payee/Lienholder ................................................ 27 |
| Right to Reimbursement From Owner or Insurer of Commercial Motor Vehicle .................................... 15 | Appraisal ..................................................................... 27 |
| Cooperation................................................................. 15 | **PART V - UNINSURED MOTORIST COVERAGE** ...........................................................27 |
| Claims Payment .......................................................... 16 | Insuring Agreement...................................................... 27 |
| Premium Adjustment................................................... 17 | Additional Definitions .................................................. 28 |
| Legal Action Against Us .............................................. 17 | Exclusions ................................................................... 29 |
| Fraud ........................................................................... 17 | Limits of Liability......................................................... 29 |
| | Other Insurance .......................................................... 30 |

**GENERAL PROVISIONS** ...........................................30

Policy Period .............................................................30

Policy Territory ..........................................................30

Policy Changes & Premium ........................................30

Policy Termination.....................................................31

    Cancellation & Premium Refund .........................31

    Policies That May Not Be Cancelled...................32

    Nonrenewal .......................................................33

    Automatic Termination ......................................33

    Proof of Notice...................................................34

    Non-Divisibility of Policy Termination .................34

Our Right to Rescind the Policy ....................................34

    Voiding for Fraud or Misrepresentation ..............34

Voiding for Failure of Payment............................34

Our Right to Deny Coverage Due to Fraud .................34

Adjusting Claims .............................................................34

Mediating Claims ...........................................................35

Our Rights to Recover (Subrogation) .........................35

Legal Action Against Us.................................................36

Bankruptcy .....................................................................36

Interests ..........................................................................36

    Transfer of Interests ...........................................36

    Joint and Individual Interests ..............................36

Our Opportunity to Defend............................................36

Compliance with State Laws.........................................36

Named Excluded Driver .................................................36

# AGREEMENT

This policy is a legal contract between the Policyholder and **us**. **We** agree to provide this insurance, subject to all terms of this policy, conditioned upon the following:

1. The information **you** gave to **us** in **your application** is true and correct; and

2. The premium is paid when due.

# DUTIES - WHAT TO DO IN CASE OF A MOTOR VEHICLE ACCIDENT OR LOSS

**IMPORTANT:** Failure to perform any of the duties listed below or comply with all policy terms may result in a claim or coverage being denied. In the event of an **accident** or **loss**:

1. **REPORT IT TO US PROMPTLY.**

    **A person claiming coverage for an accident or loss should contact us directly at 1 (888) 874-5221.**

    Every person insured under this policy must notify **us** within 24 hours or as soon as practicable of how, when, and where any **accident** or **loss** occurred involving that person or a **motor vehicle** to which any coverage under this policy may apply. When any **accident** or **loss** information becomes available to **you** or any person claiming coverage under this policy, and it is reasonably possible to do so, notice should be given to **us**. This information should include, but is not limited to:

    a. **Your** name, address, telephone number and policy number;

    b. All facts and circumstances of the **accident** or **loss**, including location, date and time, police action and weather conditions;

    c. A description of property damage and any **bodily injury** sustained by anyone involved in the **accident** or **loss**;

    d. Names and addresses of:

        (1) All persons involved or injured in the **accident**; and

        (2) Any witnesses; and

    e. The license plate numbers and descriptions of vehicles involved.

2. **COOPERATE WITH US.**

    Any person claiming any coverage under this policy must cooperate with **us**. This cooperation includes, but is not limited to:

    a. As to any claim or lawsuit:

        (1) Cooperate with and assist **us** in any matter, including in any investigation, settlement and defense.

        (2) Promptly give **us** any legal papers.

        (3) Attend depositions, hearings, arbitrations, mediations and trials as requested by **us**.

    b. As often as **we** reasonably request at a location selected by **us**:

        (1) Give **us** signed and recorded statements and statements under oath, and submit to an examination under oath by **us** or **our** representative. **We** may require that statements and examinations be done individually and outside the presence of witnesses or other persons seeking coverage or benefits. Though, a personal representative of the **person** claiming coverage may be present so long as that representative is not one who is seeking coverage or benefits. If a claimant assigns benefits to any entity, the entity shall also:

            (a) Give **us** signed and recorded statements and statements under oath; and

            (b) Submit to an examination under oath by **us** or **our** representative.

        **We** may choose any representative of that entity to appear.

        (2) Submit to, at **our** expense, medical exams, including physical and/or mental exams, by physicians **we** select. If transportation costs are incurred to get to and from such an exam to be done per **our** request, **we** will reimburse:

            (a) Reasonable costs for transportation as shown by receipts; or

            (b) Reasonable mileage reimbursement.

    If an **insured person** refuses to submit to, or fails to appear at, two such examinations, it will raise a rebuttable presumption that the **insured person's** refusal or failure was unreasonable. If an **insured person** unreasonably refuses to submit to, or appear at, a mental or physical examination, we will not pay benefits under this policy to or for that **insured person** for any subsequently rendered treatment.

Cooperation with **our** reasonable requests for examination following an **accident** is a condition precedent for coverage to apply. If a **person**, or their assignee, unreasonably refuses to cooperate with any duty listed under clause (1) and (2) above, **we** may deny benefits under this policy to or for that **person** or assignee.

c.  Provide **us** with written authorization to obtain:

(1) Medical records and reports;

(2) Employment and wage records;

(3) Other records relevant to the facts of the **auto accident** or the **bodily injuries** or other damages caused by the **auto accident**, including:

(a) Electronic records;

(b) **Business** and financial records, sales agreements, rental documents;

(c) Audio and video recordings;

(d) Phone records on any cell phone being used in the **auto** by the **person operating** the **auto** at the time of the **accident**;

(e) Computer records;

(f) Current and prior insurance claims records;

(g) Loss payee/lienholder records; and

(h) Vehicle forensic analysis.

d.  Provide any written proofs of loss **we** may reasonably require.

e.  Not to assume any obligation to other persons, or incur any expense, except at that **person's** own expense.

f.  Provide all information required by state or federal law.

3.  For claims under Part IV - Damage To Your Auto, **you** must also:

a.  Report any vandalism or theft to the police within 24 hours of discovering it.

b.  Take reasonable steps after the **accident** or **loss** to protect property from any further **loss**. **We** will pay reasonable expenses incurred to do so. If **you** do not protect property from further **loss**, any further **loss** will not be covered.

c.  Allow **us** to inspect, photograph and appraise the damaged property before its repair or disposal.

d.  Authorize **us** to move the damaged property to a storage facility of **our** choice at **our** expense. If **you** do not authorize **us** to move property, **we** have no duty to pay any storage costs that would have been avoided if the property had been moved to a storage facility of **our** choice.

e.  Give **us** any forms that may be required to be provided to **us** by the Florida motor vehicle insurance inspection laws, as amended. Not doing so, or failure to have **your auto** inspected when and as required, may result in coverage denial or suspension.

4.  For claims under Part V – Uninsured Motorist Coverage, **you** must also notify the police within 24 hours and **us** within 30 days of the **accident** if a **hit-and-run vehicle** is involved.

5.  Any **person** claiming any coverage under this policy must perform any other duty when and as required by this policy.

6.  With respect to claims under Personal Injury Protection (only), the **Cooperation** clause set forth in the Personal Injury Protection Coverage shall supersede anything that conflicts with this **Cooperate With Us** clause.

## POLICY DEFINITIONS

When shown in **bold** type in this policy, the words and phrases listed below are defined as described in these Policy Definitions. These definitions will apply throughout the policy, whether the word or phrase is used in its singular, plural, possessive, active or passive form. As used in this policy:

1.  "**Accident**" means an unexpected and unintended event that causes **bodily injury** or **property damage** and arises out of the ownership, maintenance or use of a **motor vehicle**.

2.  "**Actual cash value**" means the fair market value of the stolen or damaged property at the time of the **accident** or **loss**. Fair market value takes into account the following factors which may reduce value:

a.  The property's age, mileage and physical condition; and

b.  **Depreciation** and prior damage.

3.  "**Additional acquired auto**" means any **auto you** acquire, other than a **replacement auto**, when **you** become the **owner**, if:

a.  **We** insure all **autos owned** by **you** on the date **you** take possession of the acquired **auto**;

b.  **You** ask **us** to insure that **auto** within 30 days after **you** became the **owner**; and

c.  **You** pay the premium required by **us**.

An **additional acquired auto** will have the same coverage as the **auto** shown in the **Declarations** with the broadest coverage. If **you** ask **us** to add coverage or increase limits for that **auto**, any added coverage or increased limits will not apply until after **we** agree in writing to add the coverage or increase the limits. If **you** do not ask **us** to insure the **auto** within 30 days after **you** become the **owner**, no insurance applies to that **auto** until after **you** ask **us** to insure it and **we** agree in writing to insure that **auto**.

4. "**Application**" means the form(s) from **us** or **our** agent used to collect data to decide:

   a. If **we** will insure **you**;

   b. The coverage **we** agree to provide under this policy; and

   c. The premium **we** charge **you** for this policy.

   The "**Application**" may include, but is not limited to any:

   a. Supplemental Application from **us**;

   b. Named driver exclusion election;

   c. Forms **we** provide for coverage selection, coverage rejection or lower limit election; and

   d. Other written agreements, documents or forms **we** request or require from **you**.

5. "**Auto**" means a **motor vehicle** with four or more wheels, of the private passenger type, with a gross vehicle weight rating by the manufacturer that does not exceed 10,000 pounds, that is:

   a. Required to be registered by the state **motor vehicle** registration laws; and

   b. Designed for use on public streets and highways.

   "**Auto**" does not include any:

   a. Step-van or vans with cabs separate from the cargo area;

   b. Motorcycle, dirt bike or all-terrain vehicle (ATVs);

   c. Golf cart;

   d. Tractor;

   e. Farm machines;

   f. Vehicles operated on rails or crawler treads; or

   g. Vehicles while used:

      (1) As a residence or premises; or

      (2) For office, store or display purposes.

6. "**Auto business**" means any **business** that sells, leases, rents, repairs, services, stores, parks, valets, washes, delivers, tests, road tests, tows or transports **motor vehicles** or trailers.

7. "**Bodily Injury**" means bodily harm to a **person**, and any illness, sickness, disease or death resulting from that bodily harm.

8. "**Business**" means a trade, profession, occupation, employment, job, or commercial activity of any kind.

9. "**Declarations**" means the form **we** give to the **named insured** that lists:

   a. The **motor vehicles** insured under this policy;

   b. The licensed drivers **you** told **us reside** in **your household** and other drivers who **you** told **us** regularly operate listed **motor vehicles**;

   c. The types of coverage provided;

   d. The limits provided;

   e. The deductibles;

   f. The premiums charged;

   g. The policy period; and

   h. Other policy information.

10. "**Deliver persons or property for compensation or a fee**" means to transport or carry persons, or deliver wholesale or retail products, goods, materials or property, in exchange for any form of compensation or a fee. This includes, but is not limited to:

    a. The pick-up or delivery of magazines, newspapers, products, pizza or other food by any person who receives money, income, salary, property or anything else of value in consideration for such pick-up or delivery;

    b. The transport of persons, products, goods, materials or property by any person who receives money, income, salary, property or anything else of value in consideration for such transport; and

    c. Any travel to or from a destination related to any of the activities described in this definition, whether or not any persons or products are in the **motor vehicle** at the time of the **accident**.

11. "**Depreciation**" means the decline in value of property due to its wear and tear or it being outdated.

12. "**Failure to pay premium**" means the nonpayment, when due, of any premium or other payment due.

    "**Failure to pay premium**" includes any payment that is made by a non-cash method, including but not limited to check, credit card, ACH (automated clearing house) or other electronic payment method that is returned to **us** unpaid, rejected or dishonored by a financial institution for any reason, including payments returned due to "insufficient funds" or "closed account."

13. "**Household**" means the place where **you reside** and which is located at the address shown in the

Declarations. When located at the address shown in the **Declarations**, **your** "**household**" includes a house, apartment, condominium, mobile home, house trailer, manufactured home, group of rooms, or a self-contained single room.

14. "**Insured auto**" means:

    a. A **motor vehicle** shown in the **Declarations**.

    b. An **additional acquired auto**.

    c. A **replacement auto**.

    d. A **trailer owned** by **you**.

    **Insured auto** is defined differently in PART IV-DAMAGE TO YOUR AUTO COVERAGE.

15. "**Loss**" means sudden, direct and accidental physical damage to property, or theft of property.

16. "**Minimum limits**" means the minimum amounts of liability insurance required under the law of the state of Florida, that applies to the **owner** or **operator** of a private passenger auto, with a limit for **bodily injury** to one person in any one **accident** (the **bodily injury** "per person" limit), and with a limit for **bodily injury** to two or more persons in any one **accident** (the **bodily injury** "per accident" limit), and for **property damage** with a "per accident" limit.

17. "**Motor vehicle**" means any self-propelled land motor vehicle required to be registered by the motor vehicle registration laws, and designed mainly for use on public streets and highways. This definition of "**motor vehicle**" does not apply under Part II – **PIP**.

18. "**Named insured**" means the person(s) shown in the **Declarations**. This definition of "**named insured**" does not apply under Part II – **PIP**.

19. "**No-Fault Law**" means the Florida Motor Vehicle No-Fault Law, as amended and in effect on the date of an **accident**.

20. "**Non-owned auto**" means an **auto**, if it is:

    a. Used with the permission of the **owner** of the **auto**;

    b. Not **owned** by, registered to or available for regular or frequent use by **you**, a **relative**, any person who **resides** in **your household** or a person listed as "other drivers" in the **Declarations**;

    c. Not **owned** by, leased to or rented to **your** employer or the employer of any **person** who **resides** in **your household**; and

    d. Not rented by or in the possession of an **insured person** for more than 90 consecutive days.

    However, "**non-owned auto**" does not include a **temporary substitute**.

21. "**Occupying**" means in, on, or engaged in the immediate act of getting in, on, out or off of.

22. "**Operating**" means the acts of an **operator** of a **motor vehicle**.

23. "**Operator**" means the **person** sitting in the driver's seat, behind the steering controls of a **motor vehicle** and no other **person**.

24. "**Owned**" means to:

    a. Hold legal title to the **motor vehicle**;

    b. Have legal possession of the **motor vehicle** subject to a written conditional sales agreement; or

    c. Have legal possession of the **motor vehicle** under a lease agreement of more than three continuous months.

25. "**Owner**" means the **person** or entity who:

    a. Holds legal title to the **motor vehicle**;

    b. Has legal possession of the **motor vehicle** subject to a written conditional sales agreement; or

    c. Has legal possession of the **motor vehicle** under a lease agreement of more than three continuous months.

26. "**Person**" means a human being.

27. "**PIP**" means Personal Injury Protection as set forth in Part II of this policy, in accord with the **No-Fault Law**.

28. "**Punitive damages**" means all damages intended or awarded to:

    a. Punish or deter wrongful, malicious or unlawful conduct by any insured person;

    b. Deter wrongful, malicious or unlawful conduct by a **person**, other than any insured person, or any entity; or

    c. Fine, penalize or impose a statutory penalty; other than damages intended to compensate for **bodily injury** or **property damage** (as defined in Part I) incurred. "**Punitive damages**" include, but are not limited to, damages referred to under any law as punitive damages, exemplary damages, treble damages or statutory multiple damages.

29. "**Racing**" means to:

    a. Prepare for or participate in any organized or unorganized race, speed contest, demolition, stunt, competition or timed contest or activity;

    b. **Operate** a **motor vehicle** on an indoor or outdoor track, course or trail designed or used at any time for:

    

    (1)  A speed contest;

    (2)  Demonstration driving;

    (3)  High performance driving;

    (4)  Driving competition; or

    (5)  Off-road driving.

30.  "**Relative**" means a **person** who:

  a.  **Resides** in **your household** and is:

    (1)  Related to **you** by blood, marriage or adoption, whether or not temporarily living elsewhere; or

    (2)  **Your** ward or foster child; or

  b.  Is **your** unmarried and dependent child, ward or foster child who:

    (1)  Temporarily lives elsewhere while away at school or in the armed forces; and

    (2)  Are considered to **reside** with **you** provided they are not emancipated.

    If the **named insured** is a legal entity or organization, and is not a **person**, or a trust for a **person**, no one is a "**relative**" under this policy.

31.  "**Replacement auto**" means any **auto you** acquire, when **you** become the **owner**, if:

  a.  It replaces a **motor vehicle** shown in the **Declarations** and **you** have transferred title and possession of the replaced **motor vehicle** to someone other than **you**; and

  b.  **You** pay the premium required by **us**.

    However, no insurance will apply under Part IV – Damage to Your Auto Coverage if **you** do not ask **us** to insure that **auto** within 30 days after **you** became the **owner**. The **replacement auto** shall have the same coverage as the **auto** it replaced. If **you** ask **us** to add coverage or increase limits for that **auto**, any added coverage or increased limits will not apply until after **you** ask **us** to add the coverage or increase the limits. If **you** do not ask **us** to insure the **auto** within 30 days after **you** become the **owner**, no insurance will apply under Part IV – Damage to Your Auto to that **auto** until after **you** ask **us** to insure it and **we** agree to provide this coverage for that **auto**.

32.  "**Reside**", "**resides**" and "**residing**" means to live at a place with the intent of continually staying there as that **person's** primary and legal domicile.

33.  "**Temporary substitute**" means an **auto** used by **you**, a **relative**, or a person who has permission to use that **auto** from **you** or a **relative**, while it replaces your **insured auto** for a short time while your **insured auto** is out of use due to its:

  a.  Breakdown;

  b.  Repair; or

  c.  Servicing;

  if the **auto** is:

  a.  Being used by **you** or a **relative** with the permission of the **owner** of the **auto**;

  b.  In the lawful possession of **you** or a **relative**: and

  c.  Neither **you** nor a **relative** are the **owner** of the **auto** or has registered the **auto**.

    If an **auto** is a **temporary substitute** as defined above, it may not be considered a **non-owned auto**.

34.  "**Trailer**" means a vehicle that meets all of the following requirements at the time of **loss**:

  a.  It is not being used for **business** or commercial purposes, except while it is being towed by a private passenger **auto** to which this insurance applies.

  b.  It is being used with a **motor vehicle** to which this insurance applies.

  c.  It is designed for use with an **auto**.

  d.  It is not a home, office, store, display or passenger **trailer**.

  e.  It is not used in the **auto business**.

    **Trailer** is defined differently in PART IV-DAMAGE TO YOUR AUTO COVERAGE.

35.  "**We**," "**us**" and "**our**" means the Company shown in the **Declarations**.

36.  "**You**" and "**your**" means the:

  a.  **Named insured(s)**; and

  b.  If the **named insured** is a **person**, the **named insured's** spouse if **residing** in the **named insured's household**.

## Part I – Liability to Others Coverage

**Insuring Agreement**

                                      Imperial Fire and Casualty

**We** will pay compensatory damages, up to the limits of liability shown in the **Declarations**, for which an **insured person** is legally liable to others because of:

1. **Bodily injury**, if **you** buy Bodily Injury Liability To Others Coverage from **us**; or

2. **Property damage**, if **you** buy Property Damage Liability To Others Coverage from **us**; resulting from a **motor vehicle accident**. Damages include prejudgment interest on compensatory damages awarded against an **insured person**.

When **you** buy coverage under Part I, **we** also will pay, in addition to **our** limit of liability, all costs **we** incur to defend **insured persons** in any lawsuits that assert claims that come within the coverage **you** bought from **us**. When the coverage **you** bought under this Part I applies, **we** will defend, with an attorney of **our** choice, any lawsuit brought against an **insured person** for **bodily injury** or **property damage**, or settle these claims, as **we** deem appropriate. **Our** duty to settle or defend ends when **we** pay **our** limit of liability for payment of a judgment or settlement. **We** have no duty to settle or defend any claim that is not covered by this policy.

**Additional Payments**

When the coverage **you** bought under Part I applies, in addition to **our** limit of liability **we** will pay for an **insured person**:

1. All costs **we** incur in the settlement of any claim or defense of any lawsuit.

2. Interest accruing after the entry of judgment, for compensatory damages, on any lawsuit **we** defend to which this coverage applies. When **we** offer to pay that part of the judgment within **our** limit of liability for this coverage, **our** duty to pay post-judgment interest ends. **We** will not make any payment for this interest if **we** have not been given notice of suit or a chance to defend an **insured person**.

3. Premiums on appeal bonds and attachment bonds required in any suit **we** defend. **We** have no duty to apply for or furnish bonds. **We** will not pay the premium for a bond that is more than **our** limit of liability.

4. Up to $100 incurred by an **insured person** for the cost of a bail bond required due to an **accident** covered by this policy or a traffic law violation from such **accident**. **We** have no duty to apply for or furnish such a bond.

5. Upon request from an **insured person**, up to $50 per day for loss of earnings incurred by an **insured person**, but no other type of income, due to attendance at hearings or trials at **our** request.

6. Other reasonable expenses incurred at **our** written request that **we** have agreed in advance in writing to pay.

**Additional Definitions**

When shown in **bold** type in Part I, the words and phrases listed below are defined as described here,

below, in Part I. These definitions will apply in Part I whether used in its singular, plural or possessive form.

1. "**Insured person**" means:

   a. **You** for the:

      (1) Ownership, maintenance or use of an **insured auto**;

      (2) Use of a **non-owned auto**;

      (3) Use of a temporary substitute; and

      (4) Use of a **trailer**.

   b. A **relative**, for the use of an **insured auto**, **temporary substitute** or a **trailer**.

   c. Any **person** shown as a "driver" in the **Declarations**, for the use of an **insured auto**, **temporary substitute** or a **trailer**.

   d. Any **person** for the use of an **insured auto** or a **temporary substitute** with **your** express or implied permission.

   e. A **relative** who has been listed as a "driver" on the policy when required by **us**, for the use of a **nonowned auto**.

   f. Any other **person** or organization with respect only to legal liability for use of an **insured auto** or a **temporary substitute** by any **person** described above in this definition.

   g. Any Additional Interest Insured shown in the **Declarations**, but only to the extent of liability of a **person** described in a, b or c above for use of the **insured auto** in which they have an interest. Coverage for an Additional Interest Insured does not increase **our** limit of liability.

2. "**Property damage**" means damage to or destruction of tangible property, including the loss of use of that property.

**Exclusions**

Part I - Liability To Others Coverage, and **our** duty to defend a lawsuit, does not apply to:

1. **Bodily injury** or **property damage** that arises out of the use of any vehicle or trailer:

   a. As a public or livery conveyance; or

   b. To **deliver persons or property for compensation or a fee**.

   This exclusion does not apply to shared-expense car pools.

2. **Bodily injury** or **property damage**:

   a. Caused intentionally by or at the direction of; or

   b. That is reasonably expected by; any **insured person**.

3. **Bodily injury** or **property damage** caused by any **person** using a **motor vehicle** without the expressed or implied permission of the **owner** or

**person** having lawful possession. This exclusion does not apply to the ownership, maintenance or use of an **insured auto** by **you** or a **relative**.

4. **Bodily injury** to an employee or co-worker of an **insured person** that arises out of or in the course of employment. This exclusion does not apply to **bodily injury** to a domestic employee of an **insured person** unless benefits are payable or are required to be provided under any workers' compensation or other similar law.

5. **Bodily injury** or **property damage** that arises out of the maintenance or use of a **motor vehicle** in connection with, or in the course of, any **auto business**. This exclusion does not apply to **you**, a **relative** or an employee or agent of **you** or a **relative**.

6. **Property damage** to property:

   a. Owned or transported by an **insured person**;

   b. Rented to or in the care of an **insured person**, other than a residence or private garage rented by **you**; or

   c. Used or occupied by an **insured person**, other than a residence or private garage rented by **you**.

7. **Bodily injury** to **you** or a **relative**.

8. Liability assumed by an **insured person** under any contract or agreement, except as required by Florida Statutes § 627.7263, as amended, as to a motor vehicle rental or leasing contract.

9. **Bodily injury** or **property damage** that arises out of the ownership or use of a vehicle for **racing**. This exclusion does not apply to:

   a. An **insured person** who is innocent of participation in **racing**; or

   b. **Your** liability arising out of the ownership of an **insured auto** when the **insured auto** is used by **person** without **your** permission.

10. **Bodily injury** or **property damage** that arises out of, or is due to:

    a. The ownership or use of a vehicle for transporting any explosive substance, toxic material, flammable substance, or similarly hazardous material other than household cleaning products for personal use, or lawn mower or similar yard maintenance device fuel being safely transported in a federally approved container;

    b. Nuclear reaction or radiation;

    c. When a nuclear energy liability insurance applies or is required by law to apply; or

    d. War or warlike action of any kind.

11. **Bodily injury** or **property damage** that arises out of the ownership or use of an **insured auto** when it is:

    a. Rented, leased or provided to anyone in exchange for any form of value or compensation;

    b. Entrusted to another **person** or entity for the purpose of subleasing, leasing or selling and is no longer in **your** possession; or

    c. Sold to any entity or **person** other than **you** or a **relative**.

12. **Bodily injury** or **property damage** for any obligation for which the United States Government is liable under the Federal Tort Claims Act. This exclusion does not apply to the portion of the damages that may be recovered for **property damage** that is less than or equal to the **minimum limits** for property damage.

13. **Bodily injury** or **property damage** that arises out of use of a **motor vehicle** while it is located for use as a residence or premises.

14. **Punitive damages**.

15. Use of a **trailer** owned by **you** when used with a **non-owned auto** by any **person** other than **you** or a **relative**.

16. Use of any **trailer** while it is not attached to an **auto** except when it has become unattached in the course of use while attached to an **auto**.

17. **Bodily injury** or **property damage** that arises out of the maintenance or use of any **motor vehicle** by any **insured** while employed or otherwise engaged in any **business** (other than farming or **auto business**). This exclusion does not apply to use of a private passenger type **auto**.

**Limits of Liability**

1. The most **we** will pay for all damages is the applicable limit of liability shown in the **Declarations**, subject to the following:

   a. The limit for "each person" is the most **we** will pay for all claims due to **bodily injury** to one **person** in any one **accident**. The "each person" limit includes all derivative claims allowed by law and incurred by **persons** other than the **person** who sustains the actual **bodily injury** that results from an **accident**, including, but not limited to, claims, where allowed by law, for:

      (1) Loss of consortium;

      (2) Loss of services;

      (3) Loss of support;

      (4) Loss of society;

      (5) Loss of companionship;

      (6) Wrongful death; and

      (7) Any claims allowed by law for emotional distress or mental anguish as a result of observing the **accident** or **bodily injury**.

   b. Subject to the **bodily injury** limit for "each person", the limit for each **accident** is the most

we will pay for **bodily injury** to two or more **persons** in any one **accident**.

c.  The limit shown for **property damage** is the most **we** will pay for all **property damage** that results from any one **accident**.

2.  There will be no adding, stacking or combining of coverage afforded to more than one **motor vehicle** or **insured person** under this policy. The limits set forth in 1 above are the most **we** will pay no matter the number of:

a.  **Motor vehicles** or premiums shown in the **Declarations**;

b.  Premiums paid;

c.  **Insured persons**;

d.  Claims made or lawsuits brought;

e.  Injured **persons**;

f.  Policies issued by **us**; or

g.  Vehicles and trailers involved in the **accident**.

3.  The limit of liability that applies in any one **accident** will not be increased because a trailer is attached to an **auto** to which this insurance applies.

4.  Any amount payable under this coverage to or for an injured **person** will be reduced by any payment made to that **person** under the Part V of this policy.

5.  No one will be entitled to duplicate payments under this coverage for any element of damages that has been paid by any other coverage under this policy or any other source.

6.  When and as allowed by law, the damages attributed to the at-fault driver may be reduced by:

a.  Any amounts that would have been paid or be payable to the injured **person** as **PIP** benefits had that **person** maintained or received such coverage as required by law; and

b.  The deductible applicable to the injured **person's PIP** benefits.

7.  If **we** have issued more than one policy to **you**, **we** will pay no more than the highest limit of liability for Liability To Others Coverage applicable under one policy.

**Other Insurance**

If there is other applicable liability insurance, bonds or self-insurance with the same priority of coverage as this policy, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability coverage bears to the total of all applicable limits.

However, any insurance **we** provide with respect to the use of any **motor vehicle** other than **your insured auto**

is excess over all other insurance, bonds and self-insurance, except in the following limited case when:

1.  **You** rent or lease an **auto** that **you** do not **own**; and

2.  The rental or lease contract for that **auto** has a notice that meets the requirements in Florida Statutes §627.7263, as amended, and which states that the renting or leasing driver's liability and **PIP** insurance shall be primary;

in which case **our** duty to:

1.  Pay damages under this Liability To Others Coverage shall be primary; and

2.  Defend **you** or a **relative** under this Liability To Others Coverage shall be primary to the policy issued to the lessor or **owner** of that **auto** that applies to **your** operation of that **auto**. **We** have no duty to defend the lessor or **owner** of that **auto** under this Liability To Others Coverage.

Notwithstanding anything to the contrary above, any insurance **we** provide with respect to the use of a **trailer** shall be excess over all other insurance, bonds and self-insurance when the **trailer** is not being used with a **motor vehicle** for which insurance is provided by this policy.

**Financial Responsibility Laws**

When **we** certify this policy as proof of financial responsibility, it will comply with the Florida financial responsibility laws, as amended, to the extent required for **bodily injury**, **property damage** or both. Liability To Others Coverage is not conditioned upon the **insured person's** satisfaction of any judgment for **bodily injury** or **property damage** liability. **You** must reimburse **us** for any payment **we** make which **we** would not have made under the terms of this policy except for it being certified.

**Out-of-State Coverage**

If an **accident** covered under Part I - Liability To Others Coverage takes place in any state or province other than the state of Florida, then **your** policy will provide:

1.  Any higher specified financial responsibility liability limit if the state or province has a law requiring limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations**.

2.  At least the required minimum amounts and types of coverage if the state or province has a compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses an **auto** in that state or province.

However, if **you** did not buy Bodily Injury Liability To Others Coverage from **us** under this policy, no coverage will be provided for **bodily injury** claims.

# PART II – PERSONAL INJURY PROTECTION ("PIP")

**NOTICE: THIS POLICY LIMITS REIMBURSEMENT OF MEDICAL BENEFITS.**

**Insuring Agreement**

When **you** buy Personal Injury Protection from **us**, after the deductibles on **your** policy are met **we** will pay to or for an **insured person** who sustains **bodily injury** caused by an **accident** arising out of the ownership, maintenance or use of a **motor vehicle**:

1. **Medical benefits** if an **insured person** receives **initial services and care** within 14 days after a **motor vehicle accident**;

2. **Disability benefits**; and

3. **Death benefits**;

subject to the Limits of Liability set forth herein but not to exceed $5,000 for **death benefits** and $10,000 for **medical benefits** and **disability benefits** combined.

The following terms apply to this **PIP** coverage:

1. **PIP** benefits will be paid without regard to fault as to who caused the **accident** as required by and in accord with the **No-Fault Law**.

2. The coverage territory for **PIP** under this policy is:

   a. The state of Florida; and

   b. The United States of America, its territories and possessions, and Canada with respect to **accidents** occurring outside the state of Florida if involving a **named insured** or a **relative**, but only if the **named insured** is a **person**, and:

      (1) That **named insured** or **relative** is **occupying** an **insured auto** at the time of the **accident**; or

      (2) The **named insured** is occupying a **motor vehicle owned** by a **relative** for which security is maintained as required by the **No-Fault Law**.

3. Any **person** claiming any coverage under this **PIP** must cooperate with **us** as set forth in the policy and as set forth below under **Cooperation**.

4. **We** have the right to review the medical expenses incurred to decide if the expenses are reasonable and necessary for the diagnosis and treatment of the **bodily injury**.

5. **We** will only pay for **medical benefits** for services and care that are lawfully provided, supervised, ordered, or prescribed by a health care provider or entity who or which is properly licensed and acting within the scope of that license as authorized by the **No-Fault Law** and any related regulations pertaining to physicians and medical providers.

6. **We** have no duty to pay for any:

   a. **Medical benefits** because the service rendered is:

      (1) Unnecessary for the treatment of the **bodily injury**; or

      (2) For the treatment of a **bodily injury** that was not caused by the **accident**.

   b. Medical expenses not payable under the **No-Fault Law**.

   c. Medical expenses if the **insured person** does not receive **initial services and care** within 14 days after a **motor vehicle accident**.

   When **we** pay only a portion of a claim or **we** reject a claim due to an alleged error in the claim, **we** shall provide to the **insured person**, at the time of the partial payment or rejection, an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the **insured person** making the claim, at the **insured person's** option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

7. If an **insured person** is sued for payment of any medical expense **we** have refused to pay for a reason listed in clauses 5, 6.a.(1) or 6.b. above, we will defend the **insured person** with an attorney selected by **us** when a lawsuit is filed against the **insured person** for payment of that medical expense. **Our** payment of the cost of defense ends when **we** have paid **our** limit of liability for **medical benefits**. If an **insured person** is sued for payment of any **medical benefit** that we have refused to pay for a reason listed in clauses 5, 6.a.(1) or 6.b. above, **we** will also pay:

   a. Upon request from an **insured person**, up to $50 per day for loss of earnings incurred by an **insured person**, but no other type of income, due to attendance at hearings or trials at our request; and

   b. Other reasonable expenses the insured person incurs at our request.

8. Any proofs of claim, medical expenses and **lost wages** required under this policy shall be truthful, substantially complete, and substantially accurate as to all material elements.

**Additional Definitions**

When shown in **bold** type, the words and phrases listed below are defined as described in this Endorsement. These definitions will apply whether the word or phrase is used in its singular, plural, possessive, active or

passive form. All other words not defined here but which are set forth as Policy Definitions in your policy shall apply.

1. "**Business**" includes a business, corporation, partnership, association, commercial proprietorship, trust or other similar legal entity or organization. A "**business**" is not a **person**.

2. "**Bodily Injury**" means bodily harm and sickness, disease or death resulting from bodily harm, and death resulting from such sickness or disease.

3. "**Death benefits**" means the $5,000 payable by **us** under the **No-Fault Law** if an **insured person** dies due to **bodily injury** covered under this **PIP**.

4. "**Declarations**" means the most recent document **we** have issued to **you** for this policy that lists:

   a. The types of coverage **you** have selected;

   b. The limit for each coverage;

   c. The premium **you** must pay for each coverage;

   d. The **insured autos we** have agreed to insure under this policy;

   e. The policy term; and

   f. Other policy information.

5. "**Disability benefits**" means for an **insured person** who:

   a. Is disabled because of **bodily injury** caused by a **motor vehicle accident**; and

   b. Cannot work or perform household services;

   the following benefits:

   a. 60% of **lost wages**; and

   b. **Replacement services**.

   If the **named insured** made and signed an election to exclude the **lost wages** portion of **disability benefits**, **we** will not pay **lost wages** for the **named insured** or any dependent **relative**, as applicable per the election, which is shown in the **Declarations**.

6. "**Emergency medical condition**" means a medical condition which manifests itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

   a. Serious jeopardy to patient health;

   b. Serious impairment to bodily functions; or

   c. Serious dysfunction of any bodily organ or part.

7. "**Follow-up services and care**" means **medically necessary** follow-up services and care that is consistent with the underlying medical diagnosis rendered in accordance with **initial services and**

**care**, upon referral from and provided, supervised, ordered, or prescribed by:

   a. A physician licensed under Florida Chapter 458 or 459;

   b. A chiropractic physician licensed under Chapter 460;

   c. A dentist licensed under Florida Chapter 466; or

   d. To the extent permitted by applicable Florida law, and under the supervision of a physician, osteopathic physician, chiropractic physician, or dentist, by:

      (1) A physician assistant licensed under Florida Chapter 458 or Florida Chapter 459; or

      (2) An advanced registered nurse practitioner licensed under Florida Chapter 464.

"**Follow-up services and care**" consistent with the underlying medical diagnosis rendered pursuant to the **initial services and care** may also be provided by a lawfully licensed:

   a. A hospital or ambulatory surgical center licensed under chapter 395.

   b. An entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

   c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

   d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in a., b., c., or d. of the first paragraph of this Clause 7.

   e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or:

      (1) Has a medical director licensed under chapter 458, chapter 459, or chapter 460;

      (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

      (3) Provides at least four of the following medical specialties:

         (A) General medicine.

(B) Radiography.

(C) Orthopedic medicine.

(D) Physical medicine.

(E) Physical therapy.

(F) Physical rehabilitation.

(G) Prescribing or dispensing outpatient prescription medication.

(H) Laboratory services.

8. "**Initial services and care**" means **medically necessary** services and care lawfully rendered, supervised, ordered, or prescribed by a physician licensed under Florida Chapter 458 or Florida Chapter 459, a dentist licensed under Florida Chapter 466, or a chiropractic physician licensed under Florida Chapter 460 or that are provided in a hospital or facility that owns, or is wholly owned by, a hospital. "**Initial services and care**" may also be provided by a **person** or entity licensed under Part III of Florida Chapter 401 which provides emergency transportation and treatment.

9. "**Insured person**" means:

a. If the **named insured** is a person:

(1) The **named insured** or a **relative** who sustains **bodily injury** while:

(a) **Occupying** a **motor vehicle**; or

(b) A **pedestrian** struck by a **motor vehicle**.

(2) Any other **person** who sustains **bodily injury** while:

(a) **Occupying** an **insured auto**; or

(b) A **pedestrian** struck by an **insured auto** if the pedestrian is not eligible or qualified for **PIP** benefits under any other policy.

b. If the **named insured** is a **business**, any **person** who sustains **bodily injury** while:

(1) **Occupying** an **insured auto**; or

(2) A **pedestrian** struck by an **insured auto**.

However, the term "**insured person**" shall not include:

a. Any person, other than the **named insured**, if such person is the **owner** of a **motor vehicle** for which security is required under the **No-Fault Law**; or

b. Any person, other than the **named insured** or **relative**, who is entitled to **PIP** benefits from the **owner** of a **motor vehicle** that is not an **insured**

**auto** under this policy, or from the **owner's** insurer.

10. "**Lost wages**" means 60% of the documented loss of gross income and loss of earning capacity from the inability to work, that was proximately caused by the **bodily injury** sustained by the **insured person** caused by a **motor vehicle** accident. It does not include any loss after an **insured person's** death. Gross income, as to employed **persons**, will be determined the same way as "average weekly wage" under Florida Statutes in effect at the time the loss of wages is incurred. Loss of earning capacity means loss of income which the injured **insured person** may reasonably show would have been earned but for the **bodily injury**.

11. "**Medical benefits**" means 80% of the documented medical expenses for **medically necessary** and lawfully rendered medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services if the **insured person** receives **initial services and care** within fourteen (14) days after the **motor vehicle accident** that caused the **bodily injury** for which the **PIP** benefits are being sought. Reimbursement for **medical benefits** are only for **initial services and care** or **follow-up services and care** that are lawfully provided, supervised, ordered, or prescribed by licensed providers of services or care who are described in Section 627.736(1)(a), Florida Statutes. However, "**medical benefits**" to which this coverage applies shall be limited to and shall not exceed the PIP Fee Schedule set forth in Clause 1 of the Limits of Liability and set forth in Section 627.736(5)(a)1, Florida Statutes. Notwithstanding the foregoing:

a. If the **No-Fault Law** requires a **person**, entity or facility providing medical services, supplies or care to be licensed under Florida law in order to receive reimbursement under the **No-Fault Law**, such license is required for payment under this **PIP** coverage.

b. "**Medical benefits**" do not include, and **we** will not pay for, massage as defined in § 480.033, Florida Statutes, or acupuncture as defined in § 457.102, Florida Statutes, regardless of the **person**, entity, or licensee providing massage or acupuncture, unless required by the **No-Fault Law**.

12. "**Medically necessary**" means a medical service or supply that a prudent physician would provide for the purpose of:

a. Preventing;

b.  Diagnosing; or

c.  Treating;

an illness, injury, disease, or symptom in a manner that is:

a.  In accord with generally accepted standards of medical practice;

b.  Clinically appropriate in terms of type, frequency, extent, site, and duration; and

c.  Not primarily for the convenience of the patient, physician, or other health care provider.

13. "**Motor vehicle**" means any:

a.  Self-propelled vehicle with four or more wheels which is of a type that is both designed and required to be licensed for use on Florida highways; and

b.  Trailer or semi-trailer designed for use with such vehicle.

14. "**Motor vehicle**" does not include any vehicle that is:

a.  A mobile home; or

b.  Used in mass transit, other than public school transportation, and that is designed to transport more than five passengers, exclusive of the operator of the motor vehicle, and which is **owned** by a:

(1)  Municipality;

(2)  Transit authority; or

(3)  Political subdivision of the state.

15. "**Named insured**" means:

a.  The policyholder identified in this policy by name as the insured policyholder shown in the **Declarations**, and if that named policyholder is a **person**, that **person's** spouse if residing in the policyholder's household; or

b.  The **business** identified in this policy by name as the insured and policyholder as shown in the **Declarations**. If that named policyholder is a **business** and not a **person**, then there is no **PIP** coverage for any **relative**, including any spouse.

16. "**No-Fault Law**" means the Florida Motor Vehicle No-Fault Law, as amended and in effect on the date of an **accident**.

17. "**Operating**" means the acts of an **operator** of a **motor vehicle**.

18. "**Pedestrian**" means a **person** who is not occupying a self-propelled vehicle.

19. "**Person**" means a natural human being. "**Person**" does not include a **business**. This definition of

"**person**" will apply and no other definition of "**person**" in the policy or any other endorsement shall apply.

20. "**PIP**" means Personal Injury Protection, in accord with the **No-Fault Law**.

21. "**Replacement services**" means all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the **bodily injury**, the injured **insured person** would have performed without income for the benefit of his or her household.

**Exclusions**

1.  **We** do not provide **PIP** for **bodily injury** sustained by:

a.  The **named insured**, or a **relative**, while **occupying** a **motor vehicle owned** by the **named insured** that is not an **insured auto** under this policy.

b.  Any **person** while **operating** an **insured auto** without **your** express or implied consent.

c.  Any **person** if that **person's** conduct contributed to his or her **bodily injury** by:

(1)  Causing injury to himself or herself intentionally; or

(2)  Being injured while committing a felony. If a **person** seeking **PIP** is charged with committing a felony, **we** shall withhold **PIP** benefits pending the outcome of the case at the trial level. **Our** duty to pay **PIP** benefits will arise only if and when **we** are notified that one of the following actions has occurred at the trial level:

(a)  The prosecution makes a formal entry on the record that it will not prosecute the case against that **person**;

(b)  The charge is dismissed; or

(c)  That **person** is acquitted.

d.  Any **insured person**, other than the **named insured**, if that **insured person** is the **owner** of a **motor vehicle** for which security is required under the **No-Fault Law**.

e.  Any **insured person**, other than the **named insured** or a **relative**, who is entitled to **PIP** benefits from the insurer of the **person**, or the **person** who is the **owner** of a **motor vehicle** which is not an **insured auto** under this policy.

f.  Any **pedestrian**, other than the **named insured** or a **relative**, who is not a legal resident of the State of Florida.

g.  Any **person** while **occupying** a **motor vehicle** located for use as a residence or premises.

2. If the **named insured** made and signed an election to exclude the **lost wages** portion of **disability benefits**, **we** will not pay the **lost wages** for **bodily injury** sustained by the **named insured** or any dependent **relative**, as applicable per the election, which is shown in the **Declarations**.

3. As to **medical benefits** under **PIP**, **we** will not pay for any claim or charge:

   a. Made by or on behalf of a broker, as defined in the **No-Fault Law**.

   b. For any service or treatment that was not lawful at the time rendered.

   c. As to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

   d. Requested by or on behalf of a clinic that is not licensed with the Agency for Health Care Administration as required, or is otherwise operating in violation of the Florida Health Care Clinic Act.

   e. Associated with a bill or statement that fails to meet the requirements of the **No-Fault Law**.

   f. For any treatment or service that is up-coded, or is unbundled when the treatment or service should be bundled in accord with the **No-Fault Law**.

   g. For any medical treatment or services billed by a physician that is not provided in a hospital unless the services or treatment are:

      (1) Actually performed by the physician or are incidental to the physician's professional services; and

      (2) Are included on the physician's bill with documentation that verifies that the physician is responsible for the medical treatment or service that was rendered and billed.

   h. For any diagnostic test that is invalid as determined by the Florida Department of Health, in accord with the **No-Fault Law**.

   i. For any services performed by any **person** or organization that violates the terms of Florida Statutes prohibiting solicitation of business from a **person** involved in a **motor vehicle accident** for the purpose of making, adjusting or settling **motor vehicle** tort claims or claims for personal injury protection benefits.

## Limits of Liability

1. Payment of **medical benefits** is limited to 80 percent of the documented charge, but in no event will **we** pay more than 80 percent of the following schedule of maximum charges for **medical benefits**:

   a. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

   b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

   c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

   d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

   e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

   f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

      (1) The participating physicians fee schedule of Medicare Part B, except as provided below in subparagraphs (2) and (3).

      (2) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

      (3) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

      However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this clause f, reimbursement by **us** is limited to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by **us**.

   For purposes of 1.a. through 1.f. above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in

which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies until the last day of February of the following year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

2.  Payment of **medical benefits** set forth above in Clause 1 shall be limited by the following payment schedules, reimbursement limitations and reductions:

    a.  Medicare payment methodologies and coding policies, and, to the extent applicable, all billings of services and care must comply with the Physicians' Current Procedural Terminology ("CPT") or Healthcare Correct Procedural Coding System ("HCPCS"), or International Classification of Diseases (including ICD-9 until or unless superseded) in effect for the year in which services are rendered and comply with the CMS 1500 form instructions, the American Medical Association CPT Editorial Panel, and the HCPCS. In determining compliance with applicable CPT and HCPCS coding, guidance shall be provided by the CPT or the HCPCS in effect for the year in which services were rendered, the Office of the Inspector General, Physicians Compliance Guidelines, and other authoritative treatises designated by rule by the Agency for Health Care Administration;

    b.  The amount set forth in the indices, recommendations and classifications under the Outpatient Prospective Payment System (OPPS), as set forth by the Centers for Medicare and Medicaid Services or otherwise revised by law;

    c.  The National Correct Coding Initiative (NCCI) published edit files;

    d.  The payment reduction (MPPR) to the practice expense (PE) payment of select therapy services paid under the physician fee schedule; and

    e.  The Durable Medical Equipment, Prosthetics/Orthotics & Supplies Fee Schedule, as set forth by the Centers for Medicare and Medicaid Services or otherwise revised by law.

    f.  The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 within the year preceding the date on which the services, supplies, or care is rendered and for

the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year and until the last day of February of the following year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3.  The limit of liability shown on the **Declarations** shall apply to **PIP** as follows:

    a.  The applicable limit for emergency or non-emergency **medical benefits**;

    b.  **Lost wages**; and

    c.  **Replacement services**;

    and that limit is the most **we** will pay for **bodily injury** to each **insured person** in an **accident**.

    Notwithstanding the clause above, and concurrent with any other limitation in this Endorsement, a limit of liability for reimbursement for services and care for **initial services and care** or **follow-up services and care** of:

    a.  $2,500 shall apply under this **PIP** for **medical benefits** if the **insured person** did not have an **emergency medical condition** as determined by a provider set forth under the definition of **initial services and care** or **follow-up services and care** for that applicable care.

    b.  $10,000 shall apply under this **PIP** for **medical benefits** if a physician licensed under Chapter 458, Florida Statutes, or 459, Florida Statutes, dentist licensed under Chapter 466, Florida Statutes, physician assistant licensed under Chapter 458, Florida Statutes, or 459, Florida Statutes, or an advanced registered nurse practitioner licensed under Chapter 464, Florida Statutes, has determined that the **insured person** had an **emergency medical condition**.

4.  A limit of liability of $5,000 shall apply under this **PIP** for **death benefits** for each **insured person**. **Death benefits** are in addition to the **medical benefits**, **lost wages**, and **replacement services** provided under this policy.

5.  **PIP** Coverage is subject to any **PIP** deductible and/or **lost wages** exclusion election (also called "wage loss option") made by the **named insured**.

6.  There will be no adding, stacking or combining of coverage afforded to more than one **auto** or **insured person** under this policy. The limit of liability shown in the **Declarations** is the most **we** will pay for

expenses incurred by an **insured person**, without regard to the number of:

a. **Motor vehicles** or premiums shown in the **Declarations**;

b. Premiums paid;

c. **Insured persons**;

d. Claims made or lawsuits brought;

e. Injured **persons**;

f. Policies issued by **us**; or

g. Vehicles and trailers involved in the **accident**.

7. No one will be entitled to recover any element of damages that has been paid by any other coverage under this policy or any other source. There shall be no duplicate recovery of any element of damage from more than one source.

8. **PIP** benefits shall be reduced by:

a. Any amounts paid or payable for the same expense or elements of damages under any state workers' compensation law; and

b. The deductible amount shown in the **Declarations** for the **named insured**, and/or any dependent **relative**, that applies per the election shown in the **Declarations**. For **medical benefits**, the deductible is applied to 100% of the amount payable subject to the Limits of Liability for documented medical expenses, but before the 80% limitation of reimbursement. For **lost wages**, the deductible is applied before the 60% limitation of reimbursement.

9. If **we** have issued more than one policy to **you**, **we** will pay no more than the highest limit of liability for **PIP** applicable under one policy to any one **insured person** in an **accident**.

10. **We** will not pay any medical expense if payment is not required by the **No-Fault Law**, or that exceeds the amount the **No-Fault Law** allows to be charged.

11. If a provider submits a charge for an amount less than the maximum amount under the Fee Schedule in Limits of Liability Clause 1, above, **we** will not pay more than 80% of the charge submitted.

12. **We** will not pay any charge for treatment or service that is upcoded, or that is unbundled when such treatment or service should be bundled, as set forth in the **No-Fault Law**, and **we** will change the codes as permitted by the **No-Fault Law** and thereafter pay no more than the amount then payable under the Fee Schedule in Limits of Liability Clause 1, above.

**Other Insurance**

1. The **PIP** coverage of this policy will be primary to any other coverage available under this policy for

Medical Payments Coverage and/or Uninsured Motorist Coverage. These coverages may not be applied to cover any deductible selected for **PIP**. If Medical Payments Coverage is afforded by this policy, that insurance shall be allowed to pay the medical expenses not covered by PIP due to the 20% reduction under the limits of liability and the **No-Fault Law**.

2. If two or more insurers are obligated to pay **PIP** benefits for the same **bodily injury** to any one **insured person**, the maximum amount payable to or for that **insured person** shall be the minimum amount required by the **No-Fault Law**. Any insurer paying such benefits shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

3. When:

a. **You** rent or lease an **auto** that **you** do not **own**; and

b. The rental or lease contract for that **auto** has a notice that meets the requirements in Florida Statutes §627.7263, as amended, and which states that the renting or leasing driver's liability and **PIP** insurance shall be primary;

**our** duty to pay **PIP** benefits, if coverage applies, shall be primary to the policy issued to the lessor or **owner** of that **auto** that applies to **your** operation of that **auto**, but only to the extent of the minimum amount required by the **No-Fault Law**.

4. Except where **PIP** coverage applies on a primary basis as set forth above, when other **PIP** coverage applies, the order of priority set forth in Florida Statutes, as amended, shall apply.

**Right to Reimbursement From Owner or Insurer of Commercial Motor Vehicle**

If **we** issue this policy to cover an **insured auto** that is a private passenger auto not used primarily for occupational, professional, or business purposes, we shall have a right of reimbursement, to the extent of **our** payment, against the **owner** of a commercial **motor vehicle** and the insurer of the **owner** of a commercial **motor vehicle** as defined under the **No-Fault Law**, for benefits paid as a result of an **insured person occupying** the commercial **motor vehicle** or having been struck by the commercial **motor vehicle** while not **occupying** any self-propelled vehicle.

**Our** right of reimbursement under this section does not apply to an owner or registrant of a motor vehicle used as a taxicab as identified in Section 627.733(1)(b), Florida Statutes.

**Cooperation**

Any **person** claiming any coverage under this **PIP** must cooperate with **us**. This cooperation includes, but is not limited to:

1. As to any claim or lawsuit:

   a. Cooperate with and assist **us** in any matter, including in any investigation, settlement and defense.

   b. Promptly give **us** all legal papers.

   c. Attend depositions, hearings, arbitrations, mediations and trials as requested by **us**.

2. As often as **we** reasonably request at a location selected by **us**:

   a. Give **us** signed and recorded statements and statements under oath, and submit to examinations under oath by **us** or **our** representative. The scope of questioning during any examination under oath shall be all relevant information and information that could reasonably be expected to lead to relevant information.

   Compliance with this requirement is a condition precedent to receiving benefits under this **PIP**. **We** may require that statements and examinations be done individually and outside the presence of witnesses or other **insured persons** seeking coverage or benefits. A legal representative of the **insured person** claiming coverage may be present so long as that representative is not one who is seeking coverage or benefits. If a claimant assigns benefits to any entity, the entity shall also:

   (1) Give **us** signed and recorded statements and statements under oath; and

   (2) Submit to examinations under oath by **us** or **our** representative.

   **We** may choose any representative of that entity to appear. **We** will not make a payment under this **PIP** if a **person**, or their assignee, unreasonably refuses to cooperate with any duty listed above.

   b. Submit to, at **our** expense, medical exams, including physical and/or mental exams, by physicians **we** select. If transportation costs are incurred to get to and from such an exam to be done per **our** request, **we** will reimburse:

   1. Reasonable costs for transportation as shown by receipts; or

   2. Mileage, if incurred, according to the standard mileage rate set by the Internal Revenue Service in effect on the day the transportation occurred.

If an **insured person** refuses to submit to, or fails to appear at, two such examinations, it will raise a rebuttable presumption that the **insured person's** refusal or failure was unreasonable. With regard to any other coverage under this policy, it is deemed unreasonable if a **insured person** refuses to submit to, or fails to appear at, two such examinations. If an **insured person** unreasonably refuses to submit to, or appear at, a mental or physical examination, we will not pay benefits under this policy to or for that **insured person** for any subsequently rendered treatment.

3. Provide **us** with written authorization to obtain:

   a. Medical records and reports;

   b. Employment and wage records;

   c. Other relevant records, including, but not limited to:

   (1) Electronic records other than GPS;

   (2) **Business** and financial records, sales agreements, rental documents;

   (3) Audio and video recordings;

   (4) Phone records including cell phone records;

   (5) Computer records;

   (6) Current and prior insurance claims records;

   (7) Loss payee/lienholder records; and

   (8) Vehicle forensic analysis.

4. Provide any written proofs of loss **we** may reasonably require.

5. Not to assume any obligation to other **persons**, or incur any expense, except at that **person's** own expense.

6. Provide all information required by state or federal law.

7. Perform any and all other duties that are set forth in the policy.

**Claims Payment**

1. **We** may pay **medical benefits** to the:

   a. **Insured person**; or

   b. **Person** or entity that is lawfully providing the supplies and services for such benefits.

2. **We** may pay **death benefits** to:

   a. The executor or administrator of the deceased;

   b. Any of the deceased's **relatives** by blood or legal adoption, or by marriage; or

   c. Any **person** who appears to **us** to be equitably entitled to the **death benefit**.

3. **We** will pay **disability benefits** owed under this policy's **PIP** not less than every 2 weeks.

4. **PIP** benefits will be paid within the time limitations, subject to any applicable tolling periods, set forth in the **No-Fault Law**, after **we** have been furnished written notice of the fact of a covered loss and of the amount of the covered loss.

**Premium Adjustment**

The premium for **PIP** under this policy shall be deemed provisional and subject to adjustment if:

1. There is:

   a. A change in the statutory obligations related to the **No-Fault Law**; or

   b. An adverse judicial finding as to the constitutionality of any provisions of the **No-Fault Law**;

   that provide for the exemption of **persons** from tort liability; and

2. The **PIP** rates, rules or premiums must be changed due to such change or finding.

If this is a renewal policy, such adjustment shall include the amount of any return premium previously credited or refunded to the **named insured**, in accord with the **No-Fault Law**, with respect to insurance provided under a previous policy.

If the final adjusted premium is greater than the premium shown in the **Declarations**, the **named insured** shall owe **us** for:

1  The excess premium amount; and

2. The amount of any return premium previously credited or refunded.

**Legal Action Against Us**

No legal action may be brought against **us** to recover any sum under **PIP** coverage until, as per the **No-Fault Law**:

1. The **PIP** payment being claimed against **us** is overdue;

2. The **PIP** claimant sends **us** a demand letter, with notice of the claim(s) that provides:

   a. The name of the insured upon which such benefits are being sought;

   b. A copy of an assignment giving rights to the claimant;

   c. The claim number or policy number;

   d. The name of the medical provider;

   e. The dates of treatment, services or care in dispute;

   f. The exact amount charged for each of those dates claimed to be due; and

   g. The nature of the claim;

   by registered or certified U.S. postal mail with return receipt requested; and

3. Within 30 days after **our** receipt of the demand letter, **we** have not:

   a. Paid the overdue claim stated in the demand letter; or

   b. Agreed to pay in the future for treatment that has not yet been rendered.

In any civil action to recover **PIP** benefits brought by a claimant against **us**, all claims related to the same health care provider for the same injured **person** shall be brought in one action, unless good cause is shown why such claims should be brought separately. **We** will provide a copy of **our** log of benefits paid to the **insured person** within 30 days after receiving a request for the log from the **insured person**. If there is any dispute between **us** and an **insured person**, or their assignee, upon request that **we** notify the **insured person** or the assignee when the **PIP** policy limits have been reached, **we** will give such notice within 15 days after the limits have been reached.

**Fraud**

The following shall apply in addition to the provisions set forth in "**Our Right to Rescind the Policy**" and "**Our Right to Deny Coverage Due to Fraud**":

If **we** have a reasonable belief that a fraudulent insurance act, for the purposes of Section 626.989 or Section 817.234, Florida Statutes, has been committed, **we** will notify the **insured person**, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to conduct **our** fraud investigation. No later than 90 days after the submission of the claim, **we** will deny the claim or pay the claim with simple interest as required by the **No-Fault Law** from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts will be reported to the Division of Insurance Fraud.

Benefits are not due or payable under this **PIP** to or on the behalf of an **insured person** if that **insured person** has committed, by a material act or omission, insurance fraud relating to **PIP** coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured person** or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under this **PIP** coverage for the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by **us** in its entirety from the **insured person** who committed insurance fraud. The prevailing party is entitled to its costs and attorney fees in any action in which it prevails in an action by **us** to enforce **our** right of recovery under this paragraph.

**We** may void this policy and coverage to any **person** who conceals or misrepresents any material fact or circumstance affecting this insurance, or who engages in fraudulent conduct related to this insurance, at the time application is made.

Page 17 of 38

## PART III – MEDICAL PAYMENTS COVERAGE

**Insuring Agreement**

If **you** buy Medical Payments Coverage from **us**, **we** will pay as follows, subject to the Limits of Liability:

1. For **medically necessary medical expenses** for **initial services and care** and **follow-up services and care** furnished within one year from the date of a motor vehicle **accident** due to **bodily injury**:

   a. Sustained by an **insured person**; and

   b. Caused by that motor vehicle **accident**;

   if an **insured person** receives **initial services and care** within 14 days after the **accident**.

2. For funeral services incurred because of death that results from **bodily injury** sustained by an **insured person** in an **accident** within one year from the date of the **accident**.

The following terms apply to Medical Payments Coverage:

1. Medical Payments Coverage is excess over Personal Injury Protection Coverage. The Personal Injury Protection deductible amount shown in the **Declarations** for the **named insured**, and/or any dependent **relative**, that applies as shown in the **Declarations**, is not payable under Medical Payments Coverage.

   However, this Medical Payments Coverage will apply towards payment of the 20% co-pay under Personal Injury Protection.

2. **We** have the right to review the **medical expenses** incurred to decide if they are reasonable, related and necessary for the diagnosis and treatment of the **bodily injury**.

3. **We** have no duty to pay for any:

   a. Services that are not lawfully rendered in compliance with all relevant applicable criminal, civil, and administrative requirements of local, state, and federal law related to the provision of medical services or treatment and prescribed and provided by a state licensed medical or health care provider acting within the scope of that license.

   b. Portion of a **medical expense** that is unreasonable.

   c. **Medical expense** because the service rendered is:

      (1) Unnecessary for the treatment of the **bodily injury**; or

      (2) For the treatment of a **bodily injury** that was not caused by the **accident**.

4. If an **insured person** is sued for payment of any medical expense that **we** have refused to pay because the:

   a. Services were not prescribed and provided by a state licensed medical or health care provider acting within the scope of that license;

   b. A portion of a **medical expense** is unreasonable; or

   c. The **medical expense** was for a service rendered that was unnecessary for the treatment of the **bodily injury**;

   **we** will also pay:

   a. The cost of the defense of the **insured person** by an attorney selected by **us** when a lawsuit is filed against the **insured person** for payment of that **medical expense**. **Our** payment of the cost of defense ends when **we** have paid **our** limit of liability under Medical Payments Coverage for funeral services and **medical expenses**;

   b. Upon request from an **insured person**, up to $50 per day for loss of earnings incurred by an **insured person**, but no other type of income, due to attendance at hearings or trials at **our** request; and

   c. Other reasonable expenses the **insured person** incurs at **our** request.

5. **We** may use other sources of information to decide if any **medical expense** is reasonable and necessary and caused by an **accident**. These sources include but are not limited to:

   a. Exams by physicians **we** select, at **our** expense, as often as **we** reasonably request;

   b. Review of medical records and test results by persons and services selected by **us**;

   c. Computer programs and databases for the analysis of medical treatment and expenses; and

   d. Published sources of medical expense information.

**Additional Definitions**

When shown in **bold** type in this Medical Payments Coverage, the words and phrases listed below are defined as described here, below in Part III. These definitions will apply in Medical Payments Coverage whether the word or phrase is used in its singular, plural, possessive, active or passive form.

1. "**Insured person**" means:

   a. **You** or a **relative** while:

      (1) **Occupying** an **insured auto**, **non-owned auto** or a **temporary substitute**; or

(2) Not **occupying** a **motor vehicle** and being struck as a pedestrian or bicyclist by a **motor vehicle**.

b. Any other **person** while **occupying** an **insured auto**.

2. "**Deliver persons or property for compensation or a fee**" means to transport or carry persons, or deliver wholesale or retail products, goods, materials or property, in exchange for any form of compensation or a fee, or in the course of any **business** activities of a person insured under this policy. This includes, but is not limited to:

a. The delivery of magazines, newspapers, products, pizza or other food;

b. The transport of persons, products, goods, materials or property by any person who receives money, income, salary, property or anything else of value in consideration for such transport or any **business** activity that includes such transport; and

c. Any travel to or from a destination related to any of the activities described in this definition, whether or not any persons or products are in the **motor vehicle** at the time of the **accident**.

3. "**Emergency medical condition**" means a medical condition which manifests itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a. Serious jeopardy to patient health;

b. Serious impairment to bodily functions; or

c. Serious dysfunction of any bodily organ or part.

4. "**Follow-up services and care**" means **medically necessary** follow-up services and care that is consistent with the underlying medical diagnosis rendered in accordance with **initial services and care**, which may be provided, supervised, ordered, or prescribed only by:

a. A physician licensed under Florida Chapter 458 or 459;

b. A chiropractic physician licensed under Chapter 460;

c. A dentist licensed under Florida Chapter 466; or

d. To the extent permitted by applicable Florida law, and under the supervision of a physician, osteopathic physician, chiropractic physician, or dentist, by:

(1) A physician assistant licensed under Florida Chapter 458 or Florida Chapter 459; or

(2) An advanced registered nurse practitioner licensed under Florida Chapter 464.

"**Follow-up services and care**" may also be provided by:

a. A hospital or ambulatory surgical center licensed under chapter 395.

b. An entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in a., b., c., or d. of the first paragraph of this Additional Definition 4.

e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or:

(1) Has a medical director licensed under chapter 458, chapter 459, or chapter 460;

(2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(3) Provides at least four of the following medical specialties:

(A) General medicine.

(B) Radiography.

(C) Orthopedic medicine.

(D) Physical medicine.

(E) Physical therapy.

(F) Physical rehabilitation.

(G) Prescribing or dispensing outpatient prescription medication.

(H) Laboratory services.

5. "**Initial services and care**" means **medically necessary** services and care lawfully rendered, supervised, ordered, or prescribed by a physician licensed under Florida Chapter 458 or Florida Chapter 459, a dentist licensed under Florida Chapter 466, or a chiropractic physician licensed under Florida Chapter 460 or that are provided in a hospital or facility that owns, or is wholly owned by, a hospital. "**Initial services and care**" may also be provided by a **person** or entity licensed under Part III of Florida Chapter 401, which provides emergency transportation and treatment.

6. "**Medical expense**" and "**medical expenses**" mean costs incurred for necessary medical, surgical, chiropractic, dental, x-ray, ambulance, hospital and professional nursing services. It also includes costs for prescribed rehabilitative services, drugs, eyeglasses, hearing aids, and orthopedic and prosthetic devices.

7. "**Medically necessary**" means a medical service or supply that a prudent physician would provide for the purpose of:

   a. Preventing;

   b. Diagnosing; or

   c. Treating;

   an illness, injury, disease, or symptom in a manner that is:

   a. In accord with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

**Exclusions**

Medical Payments Coverage does not apply to **medical expenses**:

1. For **bodily injury** that arises out of the use of any vehicle or trailer:

   a. As a public or livery conveyance; or

   b. To **deliver persons or property for compensation or a fee**.

   This exclusion does not apply to:

   a. Shared-expense car pools; or

   b. **Bodily injury** sustained by **you** or a **relative** while a passenger in a taxi, limousine or a public conveyance.

2. For **bodily injury** that is self-inflicted and caused intentionally by, or at the direction of, the injured **insured person**, or that is reasonably expected by that **person**, even if the **bodily injury** that results is not what was intended.

3. For **bodily injury** that occurred in the course of employment if benefits under a workers' compensation law or similar law are required or available for that **person**.

4. For **bodily injury** that arises out of the use of a **motor vehicle** by an **insured person** in any **auto business**.

   This exclusion does not apply to the use of an **insured auto** by **you** or a **relative**.

5. For **bodily injury** that arises while **occupying** or using any **motor vehicle** or trailer while being used for **racing**.

6. For **bodily injury** that arises out of, or is due to:

   a. The ownership or use of a vehicle for transporting any explosive substance, toxic material, flammable substance, or similarly hazardous material other than the fuel, fluids or chemicals used in the ordinary operation of a personal passenger automobile or household;

   b. Nuclear reaction or radiation;

   c. Any event to which a nuclear energy liability insurance applies or is required by law to apply; or

   d. War or warlike action of any kind.

7. For which the United States Government is liable under the Federal Tort Claims Act.

8. That results in medical expense covered by The Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) or any similar benefits program provided to members of the military services.

9. For **bodily injury** that arises out of the operation of farm machinery.

10. For **bodily injury** sustained while **occupying** any vehicle while it is located for use as a residence or premises.

11. For any treatment, services, products or procedures that are:

    a. Experimental, for research, or not primarily designed to serve a medical purpose;

    b. Not commonly recognized in the medical profession in the United States as a customary treatment for the **bodily injury**; or

    c. Incurred for thermography or other related procedures of similar nature.

12. For **bodily injury** that arises out of the use of an **insured auto**:

    a. While rented or leased to anyone;

    b. While provided to anyone in exchange for any form of value or compensation other than:

       (1) Shared-expense car pools; or

       (2) Permissive use in exchange for gas or lawful services;

    c. While entrusted to another **person** or entity for the purpose of subleasing, leasing or selling, and is no longer in **your** possession; or

    d. After it has been sold by **you** or a **relative**.

    This exclusion does not apply to **you** or a **relative**.

13. For massage as defined in § 480.033, Florida Statutes, or acupuncture as defined in § 457.102, Florida Statutes, regardless of the **person**, entity, or licensee providing massage or acupuncture.

14. For health or medical service or care that was not lawfully provided, supervised, ordered, or prescribed by a provider of health or medical services licensed to render such service or care in the state in which the service or care is rendered, or rendered by a provider who is licensed but is not acting within the scope of that license.

15. For **bodily injury** that occurs while an **insured person** is driving or **occupying** a motor vehicle with less than four wheels.

16. For mileage or transportation costs.

17. For health or medical service or care at an entity or facility that was not licensed to render such service or care in the state in which the service or care is rendered, or rendered by a provider who is licensed but is not acting within the scope of that license.

18. For **bodily injury** sustained while **occupying** a **trailer**.

**Limits of Liability**

1. **We** will not pay any amount for the total of all **medical expenses** or funeral expenses incurred due to **bodily injury** to any one **insured person** in an **accident** that exceeds the applicable limit of liability shown in the **Declarations**.

2. In determining the amount **we** will pay for medical expense incurred by an **insured person** due to an **accident**, **our** payment shall be 100% of the following schedule of maximum charges, reduced by any amount paid as benefits under the No-Fault Law:

   a. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

   b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

   c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

   d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

   e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

   f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

      (1) The participating physicians fee schedule of Medicare Part B, except as provided below in subparagraphs (2) and (3).

      (2) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

      (3) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

      However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this clause f, reimbursement by **us** is limited to the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by **us**.

   For purposes of 2.a. through 2.f. above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies until the last day of February of the following year, notwithstanding any subsequent change made to the fee schedule or payment limitation.

3. Payment of **medical expenses** set forth above in Clause 2 shall be limited by the following payment schedules, reimbursement limitations and reductions:

   a. Medicare payment methodologies and coding policies, and, to the extent applicable, all billings of services and care must comply with the Physicians' Current Procedural Terminology ("CPT") or Healthcare Correct Procedural Coding System ("HCPCS"), or International Classification of Diseases (including ICD-9 until or unless superseded) in effect for the year in which services are rendered and comply with the CMS 1500 form instructions, the American Medical Association CPT Editorial Panel, and the HCPCS. In determining compliance with applicable CPT and HCPCS coding, guidance shall be provided by the CPT or the HCPCS in effect for the year in which services were rendered, the Office of the Inspector General, Physicians Compliance Guidelines, and other authoritative treatises designated by rule by the Agency for Health Care Administration;

b. The amount set forth in the indices, recommendations and classifications under the Outpatient Prospective Payment System (OPPS), as set forth by the Centers for Medicare and Medicaid Services or otherwise revised by law;

c. The National Correct Coding Initiative (NCCI) published edit files;

d. The payment reduction (MPPR) to the practice expense (PE) payment of select therapy services paid under the physician fee schedule; and

e. The Durable Medical Equipment, Prosthetics/Orthotics & Supplies Fee Schedule, as set forth by the Centers for Medicare and Medicaid Services or otherwise revised by law.

f. The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 within the year preceding the date on which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year and until the last day of February of the following year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

4. If a **person**, entity or facility providing medical services, supplies or care in Florida is required under the Florida No-Fault Law to be licensed under Florida law in order to receive reimbursement under the No-Fault Law, such license is required for this Medical Payments Coverage to apply to such services, supplies or care.

5. **This coverage does not apply to any medical expense not covered under Personal Injury Protection as defined by the Florida No-Fault Law, as amended.**

6. **We** will not pay:

a. Any charge for treatment or service that is upcoded, or that is unbundled when such treatment or service should be bundled, and **we** may change the codes as permitted by the Florida No-Fault Law with respect to Personal Injury Protection, and thereafter pay no more than the amount then payable stated above in clause 2 of this Limits of Liability; or

b. Any statement of charges or Centers for Medicare and Medicaid Services 1500 form of UB 92 form submitted to **us** for treatment or services that is:

(1) Rendered more than 35 days before the postmark date or electronic transmission date of the statement or form; or

(2) Not submitted to **us** on a properly completed Centers for Medicare and Medicaid Services 1500 form, UB 92 form, or any other standard form approved by the office or adopted by the commission, including all material provisions with all relevant information.

7. There will be no adding, stacking or combining of coverage afforded to more than one **auto** or **insured person** under this policy. The limit of liability shown in the **Declarations** is the most **we** will pay for expenses incurred by an **insured person**, without regard to the number of:

a. **Motor vehicles** or premiums shown in the **Declarations**;

b. Premiums paid;

c. **Insured persons**;

d. Claims made or lawsuits brought;

e. Injured **persons**;

f. Policies issued by **us**; or

g. Vehicles and trailers involved in the **accident**.

8. Any payment made under Medical Payments Coverage shall reduce the damages that **insured person** may recover from **us** under:

a. Liability To Others Coverage; or

b. Uninsured Motorist Coverage.

9. No one will be entitled to duplicate payments under this coverage for any element of damages that has been paid by any other coverage under this policy or any other source.

10. The most **we** will pay for funeral expenses incurred for one **insured person** is $1,000.

11. If **we** have issued more than one policy to **you**, **we** will pay no more than the highest limit of liability for Medical Payments Coverage applicable under one policy to any one **insured person** in an **accident**.

12. Notwithstanding the foregoing in Limits of Liability clause 2 through 5, with respect to **medically necessary medical expenses** incurred due to **bodily injury** sustained by an **insured person** in an **accident** that occurs outside of the state of Florida, **we** will pay up to **our** limit of liability shown on the **Declarations** for the usual and customary amount for reasonable **medical expenses** incurred for services and care rendered outside of the state of Florida.

Imperial Fire and Casualty

**Other Insurance**

1. Medical Payments Coverage is excess to, and shall not duplicate, any medical expense paid or payable under any and all Personal Injury Protection benefits paid or payable under this or any other policy.

2. If there is other applicable **motor vehicle** insurance (not including any Personal Injury Protection) providing coverage for medical expense or funeral expense, **we** will pay only **our** share of the covered expenses. **Our** share is the proportion that **our** limit of liability coverage bears to the total of all applicable limits.

   However, any insurance **we** provide for an **insured person** who sustains **bodily injury** while **occupying** a **non-owned auto** will be excess over all other **motor vehicle** insurance providing coverage for medical expense or funeral expense.

**Legal Action Against Us**

1. No legal action may be brought against **us** to recover any sum under Medical Payments Coverage until:

   a. The **insured person** under Medical Payments Coverage sends **us**, at his or her expense, a demand

      letter at the address **we** have on file with the Florida Department of Financial Services, with notice of the claim(s) that describes the amount and nature of that claim, by registered or certified U.S. postal mail with return receipt requested; and

   b. 30 days after **our** receipt of:

      (1) A written notice of intent to initiate litigation, which may not be sent until the payment is overdue, that states with specificity the name of the **insured person** upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant;

      (2) The claim number or policy number upon which such claim was originally submitted to the insurer;

      (3) The name of any medical provider who rendered to an **insured person** treatment, services, accommodations, or supplies that form the basis of such claim; and

      (4) An itemized statement specifying:

         (a) The date of treatment, service, or care for which **medical expenses** are claimed to be due; and

         (b) The exact amount for each of those dates claimed to be due.

2. In any civil action to recover Medical Payments Coverage benefits brought by or on behalf of anyone who is an **insured person**, all claims related to the same health care provider for the same injured person shall be brought in one action unless good cause is shown why such claims should be brought separately.

---

# PART IV- DAMAGE TO YOUR AUTO COVERAGE

**Insuring Agreements**

**Collision Coverage**

1. If **you** buy Collision Coverage from **us**, **we** will, at **our** option, repair, replace, or pay for **loss** to:

   a. An **insured auto** shown in the **Declarations** with a premium paid for Collision Coverage;

   b. A **non-owned auto** while **used** with permission from the **owner** of that **auto** by **you** or a **relative** listed as a driver in the **Declarations**;

   c. A **temporary substitute** while **used** with permission from the **owner** of that **auto** by **you** or a **relative** listed as a driver in the **Declarations**; or

   d. A **trailer** shown in the **Declarations** with premium paid for Collision Coverage;

   when caused by a **collision**.

2. Collision Coverage that applies to an **auto** or **trailer** includes:

   a. The manufacturer's original standard and optional equipment **permanently installed** by the vehicle manufacturer or its authorized dealer as a manufacturer's option in that **auto** or **trailer** at the time of original purchase;

   b. Replacement parts of like kind, quality and value as the manufacturer's original standard and optional equipment that are **permanently installed** in an **insured auto**.

3. We will not provide coverage for any **non-factory equipment**.

**Comprehensive Coverage**

1. If **you** buy Comprehensive Coverage from **us**, **we** will, at **our** option, repair, replace, or pay for a **comprehensive loss** to:

   a. An **insured auto** shown in the **Declarations** with a premium paid for Comprehensive Coverage;

   b. A **non-owned auto** while **used** with permission from the **owner** of that **auto** by **you** or a **relative** listed as a driver in the **Declarations**;

   c. A **temporary substitute** while **used** with permission from the **owner** of that **auto** by **you** or a **relative** listed as a driver in the **Declarations**; or

Imperial Fire and Casualty

d. A **trailer** shown in the **Declarations** with premium paid for Comprehensive Coverage.

2. Comprehensive Coverage that applies to an **auto** or **trailer** includes:

   a. The manufacturer's original standard and optional equipment **permanently installed** by the vehicle manufacturer or its authorized dealer as a manufacturer's option in that **auto** or **trailer** at the time of original purchase;

   b. Replacement parts of like kind, quality and value as the manufacturer's original standard and optional equipment that are **permanently installed** in an **insured auto**.

3. We will not provide coverage for any **non-factory equipment**.

**Additional Definitions**

When shown in **bold** type in Part IV, the words and phrases listed below are defined as described here, below, in Part IV. These definitions will apply in Part IV whether the word or phrase is used in its singular, plural, possessive, active or passive form.

1. "**Collision**" means the **insured auto**, **non-owned auto a temporary substitute vehicle**, or **trailer** overturned, or hit or was hit by another vehicle or other object. "**Collision**" does not include contact with an animal, bird or falling objects.

2. "**Comprehensive**" means any **loss** caused by an event other than a **collision**. A "**comprehensive**" **loss** includes, but is not limited to, a **loss** caused by:

   a. Missiles or falling objects;

   b. Fire;

   c. Theft or larceny;

   d. Explosion or earthquake;

   e. Windstorm;

   f. Hail, water or flood;

   g. Malicious mischief or vandalism;

   h. Riot or civil commotion;

   i. Contact with an animal, bird or falling object; or

   j. Broken glass (except when it is the result of **collision**).

3. "**Diminution in value**" means any real or perceived drop or change in market value, resale value or any other value of an **insured auto**, **non-owned auto**, a **trailer** or **non-factory equipment**, that results from a **loss** or the repair or replacement of the property after the **loss**, or is claimed following a workmanlike repair.

4. "**Electronic equipment**" means parts, equipment, devices, accessories, and enhancements that are:

   a. Not the original equipment **permanently installed** by the vehicle manufacturer or its authorized dealer as a manufacturer's option at the time of original purchase; and

   b. Designed to receive, transmit or reproduce audio, visual or other electronic data.

"**Electronic equipment**" includes, when **permanently installed** in the dashboard, console, ceiling or headrest opening of an **insured auto**:

   a. Audio devices that record and/or play sound, including: radios, including satellite radios; stereos; cassette tape decks; compact disk systems; MP3 devices; internet audio streaming devices; audio interface devices; radio scanners; and similar devices for reproducing sound. This does not include any personal blue tooth audio device;

   b. GPS and other navigation systems;

   c. Personal computers and internet access systems;

   d. Video devices, including DVD devices, VCR's; monitors; cameras and televisions; and

   e. Communication devices including telephones; microphones; hands-free devices; two-way mobile radios; and citizen-band radios.

"**Electronic equipment**" does not include devices that are not **permanently installed** in an **insured auto**.

No coverage applies under this policy for tapes, records, CDs, DVDs, other disks, or other audio, video, digital, data or recorded media used with any **electronic equipment**.

5. "**Insured auto**" means:

   a. A **motor vehicle** shown in the **Declarations**.

   b. An **additional acquired auto**.

   c. A **replacement auto**.

6. "**Permanently installed**" means affixed in the **insured auto** by use of brackets, screws, bolts, welding or other means so the item so affixed cannot be removed without tools.

7. "**Non-factory equipment**" means parts, equipment, devices, accessories, enhancements, modifications and changes that are not the original equipment or enhancements **permanently installed** by the vehicle manufacturer or its authorized dealer as a manufacturer's option at the time of original purchase.

"**Nonfactory equipment**" may include, but is not limited to:

a. Body, engine, exhaust or suspension enhancers; custom exhaust equipment; aluminum, magnesium, chrome or alloy wheels; special or wide tires or slicks; sun roofs; moon roofs; t-bar roofs; height extending roofs; ground effects; after-market lights; custom grilles, louvers, side pipes, hood scoops, or spoilers; spinner wheels; carbon fiber panels or hoods; bubble domes or windows; refrigeration; cooking equipment; furnishings; camper body, slide-on camper, camper shell or van conversion; and any equipment used for sleeping;

b. Pickup truck caps, covers and bed liners;

c. Special carpeting, custom paint, murals, decals, striping and graphics; and

d. **Electronic equipment**.

8. "**Trailer**" as defined in this Part IV means a vehicle or device which is not self-propelled that is:

a. Designed to be towed by a **motor vehicle**; and

b. Not being used for:

(1) **Business** or commercial purposes; or

(2) An office, store, display or conveying any passengers.

**Exclusions**

Coverage and benefits under this Part IV do not apply for:

1. **Loss** that arises out of the use of any **motor vehicle** or trailer of any kind:

a. As a public or livery conveyance; or

b. To **deliver persons or property for compensation or a fee**.

This exclusion does not apply to shared-expense car pools.

2. Any damage or **loss**:

a. Caused intentionally by or at the direction of; or

b. That is reasonably expected by;

1. **you**; or

2. a **relative**; or

3. the **owner** of the **motor vehicle**;

Even if the damage that results is not what was intended.

When a **loss** is caused intentionally, or is reasonably expected, by **you**, a **relative** or the **owner** of the **motor vehicle**, this exclusion shall apply to all persons having any interest in the property and is not limited to only the interest of the **person** causing the **loss**, and no coverage shall apply under Damage To Your Auto Coverage to the **loss** to the property.

3. **Loss** that arises out of any use of a **motor vehicle** or **trailer** in connection with, or in the course of, any **business**, including but not limited to **loss** while any **insured auto** or **trailer** is **used** in an **auto business**.

This exclusion does not apply to the use of an **insured auto**, **temporary substitute** or **trailer** by **you** or a **relative**.

4. **Loss** caused while **racing** any vehicle.

5. **Loss** due to:

a. The use of any vehicle or trailer for transporting any explosive substance, toxic material, flammable substance, or similarly hazardous material;

b. Nuclear reaction or radiation;

c. When a nuclear energy liability insurance applies or is required by law to apply;

d. Mold, mildew, spores, fungus, wet rot or dry rot; or

e. War or warlike action of any kind.

6. **Loss** that arises out of the use, care, custody, or control of an **insured auto** or **trailer** when it is:

a. Rented or leased to anyone;

b. Provided to anyone in exchange for any form of value or compensation other than:

(1) Shared-expense car pools; or

(2) Permissive use in exchange for gas or lawful services;

c. Entrusted to another **person** or entity for the purpose of subleasing, leasing or selling and is no longer in **your** possession; or

d. Sold to any entity or **person** other than **you** or a **relative**.

7. **Loss** that occurs to any **motor vehicle**, **temporary substitute** or **trailer** while it is located for use as a residence or premises.

8. **Loss** that results from off-road recreational use of a **motor vehicle**, **temporary substitute** or **trailer**.

9. Any **diminution in value**.

10. **Loss** that is due and confined to:

a. The following:

(1) Wear and tear;

(2) Freezing;

(3) Seepage of water;

(4) Mechanical or electrical breakdown or failure;

(5) Lack of lubricant or coolant; or

(6) Road damage to tires;

unless that **loss** results from a total theft covered by this policy;

b. Prior **loss** or damage; or

c. Manufacturer's defects.

11. **Loss** due to the seizure, confiscation, taking or destruction by government officials or law enforcement.

12. **Loss** due to the repossession of the **insured auto** or a **temporary substitute** by a **person** or entity legally entitled to do so.

13. **Loss** due to theft by **you**, a **relative**, or any **person** shown as a "Driver" in the **Declarations**.

14. **Loss** to personal effects. This exclusion does not apply to personal effects that are **non-factory equipment** and within the **non-factory equipment** limit of coverage.

15. **Loss** to the following when in or on a **trailer** or motor home:

a. Antennas;

b. Awnings or cabanas; or

c. Equipment designed to create living space.

16. **Loss** to, or loss of use of, a **non-owned auto** or **temporary substitute** rented by **you** or a **relative** if the entity renting the **auto** is not entitled by state law or under the rental agreement to recover for that **loss** or loss of use from **you** or a **relative**.

17. Any fees or charges that are not part of the cost to repair the **loss** or replace the **insured auto**, **non-owned auto**, **temporary substitute** or **trailer**.

18. **Loss** to an **insured auto**, **non-owned auto**, **temporary substitute** or **trailer** that occurs due to, or arises out of, the commission of a felony by **you** or a **relative**. This exclusion does not apply:

a. With respect to a violation of a traffic law or similar law governing the ownership or operation of a **motor vehicle**;

b. If it is a **loss** to an **insured auto** while being **used** without **your** permission at the time of the **loss** by a **person** who is not a driver shown in the **Declarations**; or

c. If involvement in the felony by **you**, a **relative** or another person who is a permissive operator of **your insured auto**, is unwilling and by force and such person was not convicted of the felony or a related crime.

**Limits of Liability**

1. The most **we** will pay, and **our** limit of liability, for a **loss** covered under this Part IV is the lesser of:

a. The **actual cash value** of the stolen or damaged property;

b. The amount necessary to repair physical damage to the property;

c. The amount necessary to replace the stolen or damaged property with other property of like kind and quality.

If an **insured auto** is stolen or **we** determine it is a total loss, **actual cash value** of the **insured auto** will be determined excluding **non-factory equipment**.

2. We will not provide coverage for any non-factory equipment.

3. In addition to the limitations set forth in 1 above, the most **we** will pay for a **trailer** is the limit of liability shown in the **Declarations** for that **trailer**.

4. The amount **we** will pay under this Part IV to repair or replace the **insured auto** shall be based on the cost of parts which may be:

a. New, used, reconditioned, remanufactured or refurbished; and

b. Original or non-original manufacturer parts or equipment (OEM or non-OEM).

5. For coverage provided for **loss** to a **non-owned auto** under this Part IV, **we** will:

a. Give it the broadest coverage applicable to any **insured auto** shown in the **Declarations**; and

b. Apply the highest deductible on any **insured auto** shown in the **Declarations**.

6. There will be no duplicate recovery for the same elements of **loss** under this policy or from any other coverage under this policy or any other source.

**Settlement of Loss**

1. Except when **we** allow the titled **owner** to keep the salvage, if **we** pay for theft of, or total loss to, an **auto**, the titled **owner** of that **auto** shall transfer and deliver to **us** the title and other requested documents.

2. With **your** consent, a repair payment may be made directly to a repair shop when damage is being repaired.

3. **We** may return any stolen property to **you** at the address shown in the **Declarations**. If **we** return recovered stolen property to **you**, any coverage that applies under Part IV shall apply to covered damage caused by that theft.

4.  At an agreed or appraised value, **we** may keep all or part of the salvaged property that has sustained a **loss**.

**You** may not abandon salvage to **us**, and **we** have no duty to preserve salvage. If **we** allow **you** or the **owner** of property to retain salvage, **we** will reduce the amount to be paid by **us** by the agreed or appraised value of the salvage.

**Other Insurance and Sources of Recovery**

If there is other vehicle damage insurance or source of recovery that applies to the **loss**, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability coverage bears to the total of all applicable limits.

However, any insurance **we** provide for a **motor vehicle** other than an **insured auto** will be excess over all other insurance, self-insurance, or sources of recovery.

**No Benefit to Bailee**

No Part IV coverage shall benefit, directly or indirectly, any **person** or entity caring for, handling, or in custody of property for a fee or other compensation.

**Loss Payee/Lienholder**

If a loss payee or lienholder is shown in the **Declarations**, **loss** covered under Part IV will be paid as interests may appear to **you** and that loss payee or lienholder. However, with **your** consent, payment may be made directly to a repair shop when the **loss** is being repaired or replaced. **We** will be subrogated to the loss payee or lienholder's rights of recovery to the extent of **our** payment.

**We** have no duty to make any payment to a lienholder or loss payee unless the **loss** is payable to **you** and all policy terms and conditions have been met. Where fraud, misrepresentation, material omission, intentional damage, conversion, secretion or embezzlement contributing to the **loss** has been committed by or at the direction of **you** or a **relative**, or where the **loss** is otherwise not covered or payable to **you** under the terms of this policy, the interest of the lienholder or loss payee will not be protected. If **we** pay a loss payee or lienholder for a **loss** which would not be otherwise covered by this policy, **we** are entitled to the loss payee's right of recovery against **you** to the extent of **our** payment.

**We** reserve the right to cancel, nonrenew or otherwise end the policy as permitted by its terms. When this policy is no longer in effect, no insurance will apply under this policy to the interest of the loss payee or lienholder. **We** will give the loss payee written notice of any policy termination as required by law.

**Appraisal**

If **you** and **we** fail to agree on the amount of **loss**, either may:

1.  Request an appraisal of the **loss**; or

2.  Demand mediation as set out in the Mediating Claims clause of the General Provisions. If mediation is demanded, it must be completed before a request for appraisal can be made.

If appraisal is requested, each party will pick a qualified and impartial appraiser. The two appraisers will select a qualified and impartial umpire. The two appraisers will separately state the **actual cash value** and the amount of the **loss**. If they fail to agree, they will submit the issue to the umpire. A decision agreed to by any two of the three **persons** will be binding as to the amount of the **loss**. The appraisers and umpire have authority only to determine the **actual cash value** and the amount of the **loss**, and have no right to make any coverage decisions under the policy.

Each party will:

1.  Pay the appraiser it picks; and

2.  Share the agreed expenses of the appraisal and umpire equally.

**We** do not waive any of **our** rights under this policy by agreeing to an appraisal of the amount of **loss**.

## PART V - UNINSURED MOTORIST COVERAGE

**Insuring Agreement**

If **you** buy Uninsured Motorist Coverage ("UM") from **us**, **we** will pay compensatory damages, up to the limits of liability shown in the **Declarations**, for which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** for **bodily injury** to an **insured person** and arise out of the operation or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

The following terms apply to this Part V:

1.  If an offer of settlement has been made to an **insured person** by the insurer of the **underinsured motor vehicle**, **we** will pay under this Part V only if **we** have:

    a.  Been given at least 30 days written notice, by certified or registered mail, of that offer to pay; and

b.   An opportunity to advance payment to the **insured person** an amount equal to the tentative settlement

within 30 days after receipt of notice.

2.  **We** are not bound by any:

a.   Judgment that arises out of a lawsuit; or

b.   Settlement for damages arising out of the occurrence or accident;

against the owner or operator of an uninsured motor vehicle or underinsured motor vehicle that occurs without **our** written consent.

3.  Any lawsuit against **us** by anyone seeking coverage under this Part V must be brought within five years after the date of the **bodily injury**.

4.  **We** will not pay damages for pain, suffering, mental anguish, or inconvenience unless the **bodily injury** sustained by the **insured person** is a "serious injury" as set out in section 627.737(2) of the **No-Fault Law**, consisting of:

a.   Significant and permanent loss of an important bodily function;

b.   Permanent injury within a reasonable degree of medical probability, other than scaring or disfigurement;

c.   Significant and permanent scaring or disfigurement; or

d.   Death.

**Additional Definitions**

When shown in **bold** type in Part V, the words and phrases listed below are defined as described here, below, in Part V. These definitions will apply in Part V whether the word or phrase is used in its singular, plural, possessive, active or passive form.

1.  "**Hit-and-run vehicle**" means a vehicle:

a.   Whose **owner** or operator cannot be identified; and

b.   That hits or otherwise causes **bodily injury** to an **insured person**.

2.  "**Insured person**" means:

a.   **You**.

b.   A **relative**.

c.   Any other **person** while **occupying** an **insured auto** with **your** permission.

d.   Any **person**, for damages that **person** is legally entitled to recover because of **bodily injury** to a **person** listed in a, b or c above. This shall not increase **our** limit of liability in any occurrence or accident to an amount greater than the limit that applies to the **person** who has sustained a **bodily injury** and is described in a, b or c above.

An "**insured person**" does not include **you** or a **relative** when **operating** a **non-owned auto** without the permission of its **owner**.

3.  "**Underinsured motor vehicle**" means a land **motor vehicle** for which one or more **bodily injury** liability bonds or policies apply at the time of the **accident** but all limits available under the bonds and policies for **bodily injury** liability coverage are less than the total damages sustained by the **insured person** who is legally entitled to recover those damages due to the occurrence or accident.

An "**underinsured motor vehicle**" does not include any vehicle or its equipment:

a.   Located for use as a residence or premises;

b.   Designed for use mainly off public roads, while not on public roads; or

c.   Operated on rails or crawler treads.

4.  "**Uninsured motor vehicle**" means a land **motor vehicle**:

a.   That is not insured or bonded for **bodily injury** liability at the time of the **bodily injury**;

b.   That is insured or bonded for **bodily injury** liability at the time of the **bodily injury** but the:

(1)  **Motor vehicle** is an **underinsured motor vehicle**; or

(2)  Bonding or insuring company:

(a)  Legally denies coverage, including when liability coverage is excluded to a nonfamily member under this policy and whose operation of an **insured auto** results in **bodily injury** to the **named insured** or a **relative**; or

(b)  Is or becomes insolvent within four years of the date of the **bodily injury**, in which case this coverage will be excess over obligations assumed by the Florida Insurance Guaranty Association to pay claims; or

c.   That is a hit-and-run vehicle.

An "**uninsured motor vehicle**" does not include any vehicle or its equipment:

a.   Insured under the liability coverage of this policy unless it is an **insured auto** to which the Liability To Others Coverage of this policy applies and liability coverage is excluded for any **person**, who is not **you** or a **relative**, for **bodily injury** damages sustained by **you** or a **relative**;

b. **Owned** by, or furnished or available for the regular use of, **you** or any **relative** unless it is an **insured auto** to which the Liability To Others Coverage of this policy applies and liability coverage is excluded for any **person**, who is not **you** or a **relative**, for damages sustained in the occurrence or accident by **you** or a **relative**;

c. Located for use as a residence or premises;

d. Designed for use mainly off public roads, while not on public roads; or

e. Operated on rails or crawler treads.

**Exclusions**

1. Part V – Uninsured Motorist Coverage does not apply to **bodily injury** to an **insured person**:

   a. If the claim is settled without **our** written consent and, as a result, **our** right to recover payment is prejudiced.

   b. While operating any vehicle or using any **insured auto**:

      (1) As a public or livery conveyance; or

      (2) To **deliver persons or property for compensation or a fee**.

      This exclusion does not apply to a shared-expense car pool.

   c. While operating, occupying, using or struck by any vehicle **owned** by **you** or a **relative**, if that vehicle is not an **insured auto** shown in the **Declarations**. This does not apply if **you** have elected and paid the extra premium for Stacked UM.

2. Part V – Uninsured Motorist Coverage shall not apply directly or indirectly to benefit any:

   a. Workers' compensation or disability benefits insurer;

   b. Self-insurer under any workers' compensation, or disability benefits or similar law;

   c. Government body or agency.

3. No coverage under Part V applies for any type of **punitive damages**.

**Limits of Liability**

1. The most **we** will pay for all damages is the applicable limit of liability shown in the **Declarations**, subject to the following:

   a. The limit for "each person" is the most **we** will pay for all claims due to **bodily injury** to one **person** in any one occurrence or accident. The "each person" limit includes all derivative claims allowed by law and incurred by **persons** other than the **person** who sustains the actual **bodily injury** that results from an occurrence or accident, including, but not limited to, claims, where allowed by law, for:

      (1) Loss of consortium;

      (2) Loss of services;

      (3) Loss of support;

      (4) Loss of society;

      (5) Loss of companionship;

      (6) Wrongful death; and

      (7) Any claims allowed by law for emotional distress or mental anguish as a result of observing the occurrence or accident or **bodily injury**.

   b. Subject to the **bodily injury** limit for "each person", the limit for each accident is the most **we** will pay for **bodily injury** to two or more **persons** in any one occurrence or accident.

2. If **you** have paid the premium for Stacked UM, then without regard to anything to the contrary in the limitations set forth above in clause 1, the most **we** will pay for all damages arising out of **bodily injury** sustained by **you** or a **relative** in any one occurrence or accident is the limit of liability that applies as shown in the **Declarations** for this Part V coverage multiplied by the number of **insured autos** listed on this policy with Stacked UM coverage.

3. Any amount payable under this coverage, to or for an injured **person**, shall reduce any amount that the **person** is entitled to recover under Part I - Liability To Others Coverage.

4. No one will be entitled to duplicate payments under this coverage for any element of damages that has been paid by any other coverage under this policy or any other source.

5. The damages an **insured person** is entitled to recover for **bodily injury** from the **owner** or operator of the **uninsured motor vehicle** or **underinsured motor vehicle** shall be reduced by:

   a. Any amount paid because of **bodily injury** by or on behalf of any **persons** or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I - Liability To Others Coverage provided by this policy;

   b. Any amount paid or payable as **PIP** benefits or any automobile medical expense coverage, including, but not limited to, all sums paid under Part II - **PIP** and under Part III - Medical Payments Coverage;

   c. The amounts of the full limits of liability for all liability bonds or policies available to the **owner** and operator of the **underinsured motor vehicle** as described in clause 6 below of this Limit of Liability section; and

d. Paid or payable because of **bodily injury** under any workers' compensation law, disability benefits law, or similar laws.

6. Subject to all other limits of liability, the most **we** will pay for **bodily injury** damages to an **insured person** caused by the **owner** or operator of an **underinsured motor vehicle** will be no more than the amount by which the **bodily injury** damages exceed the sum of the amounts of the full limits of liability for all liability bonds or policies available to the **owner** and operator of the **underinsured motor vehicle**, even if that **insured person** enters into a settlement agreement for an amount less than the sum of the full limits of liability under all applicable **bodily injury** liability bonds and policies.

7. If **we** or an affiliate insurer have issued more than one policy to **you** with this coverage, **we** will pay no more than the highest limit of liability for one **motor vehicle** applicable under any one policy. This does not apply if **you** have elected and paid the extra premium for Stacked UM.

**Other Insurance**

If there is other applicable uninsured and/or underinsured motorist insurance, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability coverage bears to the total of all applicable limits.

However:

1. Any insurance **we** provide as to a **motor vehicle**, other than **your insured auto**, will be excess over all other insurance, bonds or self-insurance.

## GENERAL PROVISIONS

**Policy Period**

This policy only applies to **accidents** and **loss** that occur during the policy period. The policy period:

1. Starts the later of:

   a. On the effective date and time shown in the **Declarations**; or

   b. At the time this policy was purchased;

2. Ends the earliest of:

   a. The day after the **named insured**, or the spouse of the **named insured** who **resides** in the same **household** with the **named insured** and is shown as a driver in the **Declarations**, asks **us** to cancel the policy or any other agreed future date;

   b. The effective date of any notice of cancellation when **we** cancel the policy;

c. The end of the policy period shown in the **Declarations**; or

d. When any Automatic Termination event occurs.

**Policy Territory**

This policy only applies to **accidents** and **loss** that occur:

1. Within the United States, its territories or possessions;

2. Within any province or territory of Canada; or

3. While the **insured auto** is in transport between ports within the policy territory; except with respect to coverage under Part II for **PIP**, for which a more limited coverage territory is set forth under Part II.

**Policy Changes & Premium**

1. **Our** contract with **you**:

   a. Is formed by this policy, the **Application**, the **Declarations**, as may be amended by **us**, and any endorsements issued by **us**; and

   b. May be changed only when **we** issue any:

      (1) Endorsement;

      (2) Amended **Declarations**; or

      (3) Amended policy.

2. If **we** make a change to broaden coverage without issuing a new policy form and without any additional premium charge, the change will apply to **your** policy as of the date **we** make the change in **your** state.

3. If information used to set **your** policy premium changes, **we** may adjust **your** premium per **our** rates and rules.

   **YOU MUST INFORM US WITHIN 30 DAYS AFTER ANY OF THESE CHANGES.** Changes should be reported to us promptly, but must be reported to us within 30 days of the change. Changes during the policy term that **you** must report to **us**, and that may result in a premium increase or decrease, include, but are not limited to, changes in:

   a. The number, type or use of **insured autos** or trailers shown on the **Declarations**;

   b. The principal garaging site of any **insured auto** or trailer shown on the **Declarations**;

   c. **Household** members or drivers who use **insured autos**;

   d. Marital status of a driver in **your household**;

   e. A **person** in **your household** reaching the legal driving age in the state where **you reside**;

   f. Coverage, limits or deductibles;

Page 30 of 38

g. Number of **accidents**, **losses** or traffic or **motor vehicle** law violations by any driver who **resides** in **your household** or who regularly operates an **insured auto**; and

h. **Your** eligibility or ineligibility for discounts or credits.

Any change to this policy requested by **you** only applies to **accidents** and **loss** that occur after the later of:

a. The effective date and time shown in the **Declarations** on which the change is shown; or

b. The time **we** or **our** agent agree to the change.

4. All premium and any applicable fees or charges must be paid.

5. **We** will give the **named insured** notice if more premium is due than first set forth for the coverage(s) elected in the **named insured's Application**. When the **named insured** gets notice that more premium is due, the **named insured** has the following options (which are further described under the Cancellation clause of this policy):

a. To continue this policy by paying the additional premium due;

b. To cancel this policy and ask for a refund of any unearned premiums; or

c. To do nothing, in which case **we** will cancel this policy and return any unearned premium.

6. The last day of any time period required by this policy to:

a. Pay premium, fees or charges;

b. Perform a duty stated in the policy or in a notice to **you** from **us**; or

c. Give any required notice to **us**;

may be any day of the year, including a Saturday, Sunday or public holiday.

**Policy Termination**

The policy period may terminate as described here.

1. **Cancellation & Premium Refund**

This policy may be cancelled during the policy period as follows:

a. During the first 2 months after the effective date of the initial policy period, the **named insured** may not cancel a policy that provides **PIP** or property damage liability, or both, unless:

(1) The **insured auto(s)** is totally destroyed;

(2) **Ownership** of the **insured auto(s)** is transferred;

(3) Another policy insures the **insured auto(s)**;

(4) The **named insured** has been charged an incorrect premium for the coverage(s) set forth in the original **Application** and **we** have given notice of the additional premium due; or

(5) The **named insured** is a military service member called to active duty or transferred by the United States Armed Forces to a location where the insurance is not required.

b. The **named insured** shown in the **Declarations**, or the spouse of the **named insured** who **resides** in the same **household** with the **named insured** and is shown as a driver in the **Declarations**, may cancel the policy, subject to clause 1.a. above. This may be done as follows:

(1) Give **us** advance written notice of the date cancellation is to take effect; or

(2) By any other means agreed to by **us** and either:

(a) The **named insured**; or

(b) The spouse of the **named insured** who **resides** in the same **household** with the **named insured**

and is shown on the **Declarations** as a driver.

**We** do not waive any of **our** rights by agreeing to cancel.

c. If the **named insured** has been charged an incorrect premium for the coverage(s) set forth in the first **Application**, **we** will give the **named insured** notice if more premium is due. When the **named insured** gets notice that more premium is due, the **named insured** has the following options:

(1) To continue this policy in full force under its original terms by paying the additional premium due within 10 days from receipt of the notice from **us** to pay the additional amount of premium due;

(2) To cancel this policy and ask for a full refund of any unearned premiums by giving **us** notice of such within 10 days from receipt of the notice from **us** to pay the additional amount of premium due; or

(3) To do nothing within 10 days from receipt of the notice from **us** to pay the additional amount of premium due. **We** will then cancel the policy effective no less than 14 days after the date of the notice from **us** to pay the additional amount of premium due.

d. **We** may cancel the policy. **We** may do this by mailing to the first **named insured**, at the last known address in **our** records:

(1) At least 10 days notice if cancellation is for **failure to pay premium**; or

(2) At least 45 days notice in all other cases.

The effective date of cancellation stated in a notice is the end of the policy period.

e. **We** may cancel this policy for any lawful reason during the first 59 days of the first policy period. Except that, **we** will not cancel **PIP** and/or property damage liability coverage for **failure to pay premium** during the first 59 days this policy is in effect unless the reason for that nonpayment cancellation is the issuance of a check for the premium that is dishonored for any reason or any other type of premium payment that was subsequently determined to be rejected or invalid. Once this policy is in effect for 60 days, or if this is a renewal policy, **we** will cancel only:

(1) For **failure to pay premium**;

(2) If **your** driver's license, or motor vehicle registration, or that of:

(a) Any driver who lives with **you**; or

(b) Any driver who regularly uses **your insured auto**; has been suspended or revoked. This must have occurred during the policy period or during the 180 days immediately preceding its effective date or, if the policy is a renewal, during its policy period; or

(3) For material misrepresentation or fraud.

f. The **named insured** may be entitled to a premium refund if this policy is cancelled. If this policy is cancelled, any refund due will be computed on a daily 90% pro-rata basis.

g. If a premium refund is due, **we** will mail it within:

(1) 30 days after the effective date of policy cancellation or receipt of a request to cancel this policy, whichever is later, if this policy is cancelled by:

(a) The **named insured**; or

(b) The spouse of the **named insured** who **resides** in the same **household** with the **named insured** and is shown as a driver in the **Declarations**.

(2) 15 days after the effective date of the policy cancellation if **we** cancel this policy.

If the refund due is not mailed within:

(1) The applicable period described here above, **we** will pay the **named insured** 8% interest on the amount due.

(2) 45 days after the applicable period described here above, the **named insured** may bring an action against **us**.

h. **Our** making or offering a refund is not a condition of, nor will it affect the effective date of, any cancellation.

i. Cancellation is without prejudice to any claim that occurs prior to the effective date of the cancellation.

Per Florida Statutes § 626.9541, **we** cannot cancel or otherwise terminate a policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured, or a household member of the insured.

2. **Policies That May Not Be Cancelled**

The following terms apply when this policy is issued per Florida Statutes § 627.7275, as amended, to reinstate the **named insured's** driving privileges in Florida after those privileges have been revoked or suspended:

a. The minimum coverages required to be maintained by Florida law may not be cancelled by:

(1) The **named insured** for any reason.

(2) **Us**, once **our** underwriting is done, or after this policy is in effect for 60 days immediately following the effective date of the initial policy period, whichever comes first. However, as allowed by law, **we** may cancel at any time if:

(a) The **named insured**; or

(b) An **operator** who **resides** in the same **household** as the **named insured** or who customarily operates the **insured auto**; has his or her driver's license suspended or revoked during the policy period.

b. Once the non-cancellable provisions of the policy become effective:

(1) The policy may not be cancelled for any reason, unless the named insured, or any other operator who resides in the household or other operator who customarily operates an automobile insured under the policy, has his or her driver license suspended or revoked.

(2) Coverages for bodily injury, property damage, and personal injury protection may not be reduced below the minimum required limits required by Florida law.

### 3. Nonrenewal

If **we** decide not to renew this policy for any lawful reason, **we** will mail notice to the first **named insured** at the last known address shown in **our** records. Notice will be mailed at least 45 days before the end of the policy period. Subject to this notice, if the policy period is:

a. Less than 6 months, **we** have the right not to renew this policy every 6 months, starting 6 months after its original effective date.

b. 6 months or longer, but less than one year, **we** have the right not to renew this policy at the end of the policy period.

c. 1 year or longer, **we** have the right not to renew this policy at each anniversary of its original effective date.

**Our** decision not to renew this policy will not solely be based on any of the following or combination of the following:

a. Any reason that is unlawful, arbitrary or capricious;

b. The sex, occupation, marital status, residence, military service, or age of the insured;

c. The principal place of garaging of the **insured auto** in Florida;

d. The race, color, creed, or national origin of the insured;

e. Domestic violence;

f. The insured was involved in a **motor vehicle accident** unless **our** file has information from which **we** in good faith determine that the insured was substantially at fault in the **accident**;

g. The insured has had only one **accident** in which he or she was at fault within the current 3-year period.

But, **we** may refuse to renew a policy under which the insured has had 3 or more **accidents**, regardless of fault, during the most recent 3-year period;

h. The insured committing a noncriminal traffic infraction as described in Florida Statutes § 318.14, as amended, unless the infraction is:

(1) A second infraction committed within an 18-month period;

(2) A third or subsequent infraction committed within a 36-month period; or

(3) A violation of Florida Statutes § 316.183, as amended, when such violation is a result of exceeding the lawful speed limit by more than 15 miles per hour;

i. The handicap or physically disability of the insured, so long as such handicap or physical disability does not substantially impair such person's mechanically assisted driving ability;

j. A traffic infraction when adjudication has been withheld and no points have been assessed per Florida Statutes § 318.14(9) & (10), as amended. But, this does not apply to traffic infractions involving **accidents** in which **we** have incurred a **loss** due to the fault of the insured; or

k. The insured being a public official.

Per Florida Statutes § 626.9541, **we** cannot refuse to renew a policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured, or a household member of the insured.

### 4. Automatic Termination

This policy, or coverage for an **insured auto**, may automatically terminate during the policy period as follows:

a. This policy will automatically terminate at the end of the current policy period if:

(1) **You** do not accept **our** offer to renew **your** policy by the end of the policy period; or

(2) There is any **failure to pay premium**, when due, for the renewal.

**Our** renewal offer is deemed rejected if there is any **failure to pay premium**, when due, for the renewal.

b. If other insurance on an **insured auto** is obtained, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date of the other insurance.

c. Any coverage provided by this policy for an **insured auto** will automatically end when that **insured auto** is sold, assigned, gifted or transferred to anyone other than **you** or a **relative**. Coverage for that **insured auto** will end the earlier of when:

(1) Title is transferred to someone other than **you** or a **relative**;

(2) Possession is transferred in connection with the sale of the **auto** to someone other than a driver shown in the **Declarations**; or

(3) No driver shown in the **Declarations** has an insurable interest in the **insured auto**.

### 5. Proof of Notice

**We** may mail or deliver any notice to the first **named insured**. Sufficient proof of notice shall be made by:

a. United States postal proof of mailing, or certified or registered mailing, of notice to the first **named insured** at the address shown in the policy for any notice that:

   (1) The policy is cancelled;

   (2) The policy is not to be renewed;

   (3) Includes the reasons for cancellation; or

   (4) **Our** intent is to issue a policy by another insurer under the same ownership or management;

b. Any type of proof of mailing or delivery of any other notice.

### 6. Non-Divisibility of Policy Termination

This policy is neither divisible nor severable. If this policy is terminated by its terms or by operation of law, the termination will be effective for all coverage, all **insured autos**, all **motor vehicles** and all **persons**, even if the reason for termination relates only to one coverage, one **insured auto** or one **person**. However, this does not apply to an Automatic Termination event described in that clause under 3.b. or 3.c.

### Our Right to Rescind the Policy

This policy may be deemed void from its inception, as if it never existed, as described here.

### 1. Voiding for Fraud or Misrepresentation

Because **we** rely on the information provided by or for **you** on **your application** when **we** agree to issue a policy to **you**, **we** have the right to void this policy from its inception if **we** learn that **you** or **your** representative, at the time the **application**:

a. Made incorrect statements or representations to **us** as to any material fact or circumstance;

b. Concealed or misrepresented any material fact or circumstance; or

c. Engaged in fraudulent conduct.

No coverage is provided for any **accident** or **loss** if **we** void this policy.

### 2. Voiding for Failure of Payment

Because coverage under this policy is conditioned on **us** receiving full, final and complete payment of the initial down-payment of premium, **we** have the right to void this policy from its inception if **we** receive an initial down-payment that is returned to **us** as unpaid for any reason.

No coverage is provided for any **accident** or **loss** if **we** void this policy because the initial down-payment is a check, credit charge, ACH or other non-cash method of payment that is:

a. Not honored by a bank or financial institution when first presented; or

b. Returned to **us** unpaid.

However, **we** will not void this policy from its inception if the initial down-payment is by check that has been returned unpaid is then cured within the earlier of:

a. 5 days after actual notice by certified mail is received by the **named insured**; or

b. 15 days after notice is sent to the **named insured** by certified or registered mail.

### Our Right to Deny Coverage Due to Fraud

1. **We** will not provide coverage for **you**, a **relative** or any other **person** when any **person**:

a. Knowingly conceals or misrepresents any fact or circumstance; or

b. Engages in fraudulent conduct;

   with respect to any **accident** or **loss** for which coverage is sought under this policy. This shall apply to deny all coverage and benefits for all **persons** and as to all interests except as set forth in clause 2 below, and is not limited to only the interest of the **person** whose conduct is the basis of **our** denial of coverage.

2. Without regard to anything to the contrary set forth in clause 1 above, **our** right to deny coverage or benefits in clause 1 above will not apply as to a claim brought under:

a. Part II – **PIP**, except as described under the "Fraud" clause in that Part II.

b. Part IV - Damage To Your Auto, but only as to the legal interest of a **named insured** or a **relative**, when

   that **person** sustains the **loss** as the result of domestic violence and the **loss** would be covered under Part IV.

### Adjusting Claims

To assist **us** in determining the value of any claim under this policy **we** may use estimating, appraisal, injury evaluation, earnings calculators, verdict reports, data publications, services and/or systems for the:

1. Amount or value of **bodily injury**, **property damage**, disability, loss of earnings, other damages, costs or expense;

2. Costs of repair, parts, replacement parts; and/or

3. **Loss** to be paid.

These publications, databases, services or systems may be **ours** or may be from third-party vendors, and may include computer software databases and analysis or special-application technology.

**Mediating Claims**

**We** or any **person** making a claim covered by this policy for:

1. **Bodily injury** in an amount of $10,000 or less; or

2. **Property damage** or **loss** to property in any amount;

may demand mediation of the claim prior to the start of a lawsuit.

A **person** demanding mediation may not demand or request mediation after a suit is filed relating to the same facts already mediated. The filing of a demand for mediation tolls the applicable time requirements for filing a lawsuit for a period of 60 days following the conclusion of the mediation process or the time prescribed in Section 95.11, Florida Statutes, as amended, whichever is later.

The demand for mediation shall:

1. Be filed with the Florida Department of Insurance, on a form approved by the Department; and

2. State the reason for the request for mediation and the issues in dispute which are to be mediated.

The Florida Department of Insurance shall randomly select qualified mediators approved by the Department.

Each party may once reject the mediator selected, either originally or after the opposing side has exercised its option to reject a mediator.

The date, time, and place of the mediation conference shall be set by the mediator and shall be held no later than 45 days following the demand for mediation. The mediation shall be conducted as an informal process in which formal rules of evidence and procedure need not be observed. If so agreed, mediation may be done by telephone. Only one mediation session may be requested for each claim unless the parties agree to further mediation.

Any party participating in mediation must have the authority to make a binding decision. All parties must mediate in good faith. Disclosures and statements made during mediation shall not be deemed admissions in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim.

The costs of mediation shall be borne equally by both parties unless the mediator determines that one party has not mediated in good faith.

**Our Rights to Recover (Subrogation)**

If **we** make a payment under this policy to or for the benefit of anyone who is an **insured person** under any coverage part, and that **person** to or for whose benefit the payment is made:

1. Has a right to recover damages from another, **we** are subrogated to that right. That **person** must:

   a. Cooperate with **us** by doing whatever is necessary to allow **us** to exercise **our** rights, including the filing of a lawsuit, within the time period that applies per the statute of limitations, against all parties who may be liable for injuries or damages arising out of the **accident**; and

   b. Not do anything after the **accident** or **loss** that would prejudice **our** rights.

2. Recovers damages from any other source, that **person** must:

   a. Hold in trust for **us** the proceeds of the recovery; and

   b. Reimburse **us** the amount of **our** payment.

These rights set forth in 1. and 2. directly above shall apply, to the extent of **our** payment, whether or not the injured party has been fully compensated for damages or loss.

However, **we** have no right of recovery:

1. For payments made by **us** under Part II - **PIP** that **we** are not entitled to recover under the **No-Fault Law**.

   Except, **we** shall have a right of reimbursement as described under the "Right to Reimbursement From Owner or Insurer of Commercial Motor Vehicle" clause in that Part II.

2. Against any **person** using an **insured auto** with the permission of its **owner** at the time of the **loss** for a payment made under Part IV - Damage To Your Auto Coverage.

3. Against an underinsured motorist if **we** have consented, in writing, to a settlement between that underinsured motorist, or its insurer, and an **insured person** under Part V. An **insured person** under Part V who seeks benefits under that coverage must give **us** at least 30 days written notice by certified or registered mail, of any settlement offer and an opportunity to protect **our** rights.

**Legal Action Against Us**

No legal action may be brought against **us**:

1. Unless all the terms of this policy are satisfied.

2. To recover any sum under Part I - Liability To Others Coverage for **bodily injury** or **property damage** until there has been a final finding by judgment after a trial, or **we** agree in writing, that an **insured person** under Part I has an obligation to pay.

No **person** or entity has a right under this policy to bring **us** into any legal action to determine the liability of any **person** insured by this policy.

**We** have no duty to keep or preserve any salvage for any purpose, including as any evidence for any type of court proceeding.

**Bankruptcy**

The bankruptcy or insolvency of a **person** insured by this policy, or that **person's** estate, shall not relieve **us** of **our** obligations under this policy.

**Interests**

1. **Transfer of Interests**

   **Your** rights and duties under this policy may not be transferred or assigned to another **person** or entity without **our** written consent. This includes, but is not limited to, assignment of **your** right to receive refunds under this policy.

   However, if a **named insured** dies:

   a. This policy will provide coverage for:

      (1) The surviving spouse who **resides** in the same **household** as the **named insured** at the time of the death of the **named insured**; and

      (2) The legal representative of the deceased **named insured**, while acting in that capacity. This only applies to the legal representative's responsibility to use the **insured auto**.

      This coverage will only apply until a Termination event as described in this policy, or the end of the policy period shown in the **Declarations**, whichever occurs first.

   b. The delivery or mailing of any notice required under this policy will be deemed good notice if delivered or mailed to the last known address prior to death for the **named insured** shown in **our** records.

**2.   Joint and Individual Interests**

If there is more than one **named insured** shown in the **Declarations**, the action of any one **named insured** shall be binding on **you** and all **persons** provided coverage under this policy. Also, when allowed by law, the action of the spouse of a **named insured** who **resides** in the same **household** with a **named insured** and is shown as a driver in the **Declarations** shall be binding on **you** and all **persons** provided coverage under this policy. Any one **named insured**, or, when allowed by law, the spouse of a **named insured** who **resides** in the same **household** with a **named insured** and is shown as a driver in the **Declarations**, may act on behalf of all other **named insureds**, **relatives** and all other **persons** and entities insured under this policy to:

   a. Make coverage elections, rejections or changes;

   b. Change drivers or other policy information;

   c. Receive notices;

   d. Terminate coverage; or

   e. Make or authorize any other change to the policy.

**Our Opportunity to Defend**

**We** shall not be bound by any:

1. Stipulated judgment;

2. Confessed judgment;

3. Default judgment or adverse entry due to failure to appear, respond or plead;

4. Motion granted due to any failure to appear, respond or plead;

in any lawsuit against any **person** or entity insured under this policy unless **we** have consented in writing to the entry of that judgment, default or granting of that motion.

**Compliance with State Laws**

If any term in this policy conflicts with the law of the state where **you reside** when this policy is issued, as shown in **our** records, that term is deemed amended to conform to that state law. All other terms remain in full effect.

**Named Excluded Driver**

A specifically named driver may be excluded from coverage under this policy when either:

1. At **your** request; or

2. By **us** in lieu of cancellation or nonrenewal of the policy under the laws of the state where **you reside**.

Imperial Fire and Casualty

If a Named Excluded Driver is shown in the **Declarations**, there is no coverage under any part of this policy for any **accident** or **loss** that occurs while an Excluded Driver is **operating** any **motor vehicle**. Additionally, this exclusion of coverage will affect all other entities and **persons**, including but not limited to **you** and **relatives**, who may be vicariously liable or liable for negligent entrustment with respect to any **accident** or **loss** arising out of the operation of a **motor vehicle** by a Named Excluded Driver.

However, if **you** bought:

1. Property Damage Liability To Others Coverage from **us** on this policy, this Named Excluded Driver clause will not prevent Property Damage Liability To Others Coverage for **property damage** that is less than or equal to the **minimum limits**.

2. **PIP** from **us** on this policy, this Named Excluded Driver clause will not prevent such **PIP** up to and including the minimum amount required by the **No-Fault Law**, and subject to the limitations and reductions set forth herein.

3. **Bodily injury** Liability To Others Coverage from **us** on this policy and the **accident** is caused by an **insured person** for whom **we** have certified this policy as proof of future financial responsibility when required by Florida law following an **accident**, this Named Excluded Driver clause will not prevent recovery for **bodily injury** Liability To Others Coverage up to the certified limit for **bodily injury** Liability To Others Coverage.

4. Uninsured Motorist Coverage ("UM") from **us** on this policy, this Named Excluded Driver clause will not prevent recovery under that UM coverage.

In witness whereof, **we** have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by **our** duly authorized representative.

**Barry Karfunkel**

**President**

**Jeffrey Weissmann**

**Secretary**

Page 38 of 38

 **Florida Personal Auto Insurance Application**

Imperial Fire & Casualty Insurance Company
PO Box 3199
Winston Salem, NC 27102-3199



| Policy # | 8728 | Effective Date: 5/23/2020 | Time: 4:45 PM | Amount Enclosed: $206.18 |
|---|---|---|---|---|

## Agency Information

| | |
|---|---|
| **Agency Name:** Univista Insurance | **Producer:** Lianne Garcia |
| **Agency Number-Producer Code:** 9005058 | **Agent License Number:** W334288 |
| **Agency E-Mail:** office1@univistainsurance.com | |

## Applicant Information

| | | | |
|---|---|---|---|
| **Applicant Name:** Nancy Morales | | **Social Security #:** | |
| **Affinity Group:** UniVista Value | | | |
| **Mailing Address:** 3620 NW 169th Ter | **City:** Miami Gardens | **State:** FL | **Zip:** 33056-4125 |
| **E-Mail Address:** | **Phone Number:** | **Work Number:** | |

## Payment Options

| Policy Term: 12 Months | # of Payments: 11 | Payment Type: Automatic Payments - Checking/Savings | Account #: XXXXXXXX4160 |
|---|---|---|---|

| Underwriting Information | Policy Discount and Surcharge Information |
|---|---|
| **Prior Company Name:** | AutoPay<br>Credit Zip Match Discount<br>New Business Discount<br>Paperless Discount |
| **Prior Policy Expiration/ Cancellation Date:** | |
| **Prior BI Limits:** | |

## Vehicle Information

| Veh | Terr | Year | Make | Model | Serial (VIN) Number | Usage | Veh Sym |
|---|---|---|---|---|---|---|---|
| 1 | 250 | 2019 | INFI | Q60 RED SPORT 400 | JN1FV7EL8KM440652 | Pleasure/Commute | EFB3B0 |

## Vehicle Information (continued)

| Veh | Garaging Address/Zip Code (if different from mailing address above) | Discounts and Surcharges |
|---|---|---|
| 1 | 33056-4125 | Airbag Discount, Anti-lock Brakes Discount, Anti-theft Discount |

## Coverage Information - 2019 INFI Q60 RED SPORT 400

| Coverages | Limits/Deductibles | Premium |
|---|---|---|
| Property Damage | $10,000 Each Accident | $399.00 |
| Personal Injury Protection | $10,000, $1,000 Deductible Per Occurrence - Named Insured and Resident Relatives, Exclusion of Work Loss Benefit - Named Insured and Resident Relatives | $604.00 |
| Other Than Collision | $1,000 Deductible | $266.00 |
| Collision | $1,000 Deductible | $944.00 |

Exhibit"C"

| | |
|---|---|
| **Combined Vehicle Premium:** | $2,213.00 |
| **Additional Charges:** | $35.00 |
| **Total 12 Month Policy Premium:** | $2,248.00 |

**Note for Comprehensive and Collision – Maximum Actual Cash Value Permitted is $70,000**
**Photos must be completed and attached for each car purchasing comprehensive or collision coverage. I understand that I am applying for the coverages indicated below for the car(s) and driver(s) listed on this application. I further understand that there is no coverage under this application unless indicated on the coverage section and unless a premium has been charged for that specific coverage.**

**Driver and Household Member Information**

| | Name (As shown on license) | Drivers License Number | License State | Driver Status | Date of Birth | Gender | Marital Status | Relationship to Applicant |
|---|---|---|---|---|---|---|---|---|
| 1 | Nancy Morales | | FL | Rated Driver | | Female | Single | Named Insured |

**List all persons living in your household who are at least 14 years of age. This includes all household members, licensed or not licensed, students living away from home and persons in the Armed Services and any children/step-children or dependents of the applicant or applicant's spouse between the ages of 14 and 21 who do not reside in the household.**
**In addition, list all persons who are "regular operators" of your vehicle, whether living in your household or not. For purposes of this requirement, a "regular operator" is anyone who has operated the vehicle to be insured under this Policy 5 times or more in a 30 day period or 60 or more times per year.**
**Furthermore, you have a continuing duty during the life of this policy to notify the Company, within 14 calendar days, when any household member or regular operator turns 14 years of age. In addition, there is a continuing duty during the life of this policy to notify the Company, within 14 calendar days, any time a person at least 14 years of age becomes a household member or regular operator.**

**Driver and Household Member Information (continued)**

| | SR-22/FR-44 | Discounts and Surcharges |
|---|---|---|
| 1 | No | Good Driver Discount |

| Applicant's Statement– WARNING: Coverage may be declared null and void if answers are not true and correct. | |
|---|---|
| 1. Are any vehicles listed on the application leased or rented to others? | NO |
| 2. Have you failed to disclose any household residents, whether licensed or not, including but not limited to children/step-children or dependents who may reside temporarily elsewhere? | NO |
| 3. Are any vehicles listed on the application a dump truck, flatbed truck, step van, panel van or stakebed truck or any other commercial auto type? | NO |
| 4. Are any vehicles listed on the application used for commercial or business purposes or used in the course of employment? | NO |
| 5. Are any vehicles listed on the application used for delivery services, the pick-up of persons or property (including but are not limited to pizza, newspaper, mail delivery, documents, supplies, parts), or emergency response type vehicles or vehicles used for emergency response purposes? | NO |
| 6. Have you failed to disclose any individuals who on a regular basis operate your car whether residing with you or not? | NO |
| 7. Are any vehicles listed on the application garaged at an address different than the policy address? | NO |
| 8. Is the garaging address provided for a PO Box? | NO |
| 9. Is the garaging address provided for a business? | NO |
| 10. All vehicles must be garaged in Florida 12 months per year. Are any vehicles listed on the application garaged in Florida for less than 12 months? | NO |
| 11. Are any vehicles listed on the application "Gray Market", i.e. not manufactured for original sale in U.S.A? | NO |
| 12. Are any vehicles listed on the application currently valued over $70,000? | NO |
| 13. Has the applicant or any listed driver been convicted, plead guilty, nolo contendere, or no contest to any felony, (whether adjudication was withheld or not), other than alcohol-related driving offenses during the last 10 years? | NO |
| 14. Are there any other vehicles owned, leased or given the regular use by anyone in your household? If the answer is "Yes", you must list the other vehicles in the remarks section below and submit proof of insurance for them. | NO |
| 15. During the past 5 years, has the applicant, any LICENSED OR NON-LICENSED HOUSEHOLD MEMBER OF THE APPLICANT (Including NON-RESIDENT member(s) between the ages of 14 and 21);  or any listed regular or infrequent driver of the vehicles listed in this application: <br><br> a.    Made a claim for medical injuries (Florida No Fault • PIP) within the last 5 years? <br> b.    Been involved in an automobile accident as a driver or passenger, whether or not at fault? <br><br> **(Explain all YES answers in Remarks)** | NO |
| **Remarks:**  Use this space for any necessary explanations.  Include reference to vehicle and driver for each explanation.  (If more space is needed include a separate sheet) | I agree with all of the "Yes" and "No" answers marked above. <br> *Nancy Morales* <br> Initial: _____ |

**Applicant's Statement – Please read carefully.**

I agree all answers to all questions in this Application are true and correct. I understand, recognize, and agree said answers are given and made for the purpose of inducing the Company to issue the Policy for which I have applied. I further agree that ALL persons 14 years of age or older who live with me, as well as ALL operators who regularly operate my vehicles and do not reside in my household, are shown above. I agree that my principal residence and place of vehicle garaging is correctly shown above and that the vehicle is in this state no less than 12 months each year. I understand the Company may rescind this Policy if said answers on this Application are false or misleading, and materially affect the risk the Company assumes by issuing the Policy. Unless otherwise specified in the Policy, I understand that I have a continuing duty to notify the Company within 14 calendar days of any changes of: (1) address; (2) garaging location of vehicles; (3) number, type, and use of vehicles to be insured under this Policy; (4) residents of my household of eligible driving age or permit age; (5) driver's license or permit status (new, revoked, suspended or reinstated) of any resident of my household; (6) operators using any vehicles to be insured under this Policy; or (7) the marital status of any resident or family member of my household. I understand the Company may rescind this Policy if I do not comply with my continuing duty of advising the Company of any change as noted above.

I understand and agree that in connection with my request for a premium quotation and Application for insurance: (1) the Company may obtain consumer reports which may include a driver history report, credit information, or personal or privileged information from third parties; (2) such information may be disclosed to affiliated or unaffiliated third parties without my prior permission but only as permitted or required by law; (3) upon my written request, the Company will inform me if a consumer report was requested and the name and address of the consumer reporting agency that furnished the report; (4) I may also request access to and correction of information the Company has collected on me; (5) the Company may request and use subsequent consumer reports in updating and renewing any insurance afforded in connection with this Application; (6) the Company will furnish a more detailed explanation of its information practices upon my request; and (7) refusal to authorize the Company to obtain a consumer report may give the Company the right to decline insurance to me.

Applicant's Initials _Nancy Morales_

I hereby authorize the Company to obtain consumer reports on me. I agree to pay any additional premium owed if the amount of premium shown is inaccurate for any reason. I understand that a cancellation penalty of 10% of the unearned premium will be assessed if I request to cancel the policy unless my request for cancellation is because I am a member of the United States Armed Forces and have been called to active duty or transferred to a location where the insurance is not required.

I understand that if my vehicle(s) is garaged in one of the following counties: Broward, Dade, Duval, Hillsborough, Orange, Palm Beach or Pinellas, and is insured for Other Than Collision/Collision, that it must be inspected by a representative of the insurer within thirty calendar days from the effective date of this policy. Failure to obtain this inspection within the required thirty days may result in suspension (i.e., LOSSES WILL NOT BE COVERED FOR OTHER THAN COLLISION/COLLISION COVERAGES) and the suspension shall continue in force until the inspection is completed.

I have had the liability coverages and available limits available fully explained to me and have selected the limits shown on the Application. I have had the different Policy coverage levels available to me fully explained. I made an informed decision and have selected the Policy coverage level shown on the Application.

I understand the policy may be rescinded and no coverage provided if my premium down payment or full payment is paid by check, credit card, or debit card and the bank returns said check unpaid or fails to honor the credit charge or debit charge in full. Further, if the dishonored check represents the initial premium payment, the contract shall be void ab initio unless the nonpayment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail, and if the contract is void, any premium received by the insurer from a third party shall be refunded to that party in full. I understand that a fee will be added to each installment after the downpayment. I understand that a fee of $25.00 for an SR22/FR44 filing, $10.00 for a late installment fee or $15.00 non-sufficient funds fee may be assessed and that those are separate and distinct from the installment fees. I understand my payments are first applied to the earned fees owed and then to the premium.

All insured requested cancellations will be computed 90% pro-rata. This is the method we will use to compute unearned premium refunds. Cancellations will be mailed or delivered at least 45 days prior to the effective date of cancellation. At least 10 days' notice of cancellation will be given for nonpayment

I understand my producer will receive compensation for this Policy in the form of a commission and may from time to time receive other compensation from the Company based on sales and/or profitability.

**Warning:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.

Applicant's Signature _Nancy Morales_     Date  05 / 26 / 2020

---

**PRODUCER'S STATEMENT:  PLEASE READ CAREFULLY**

I have asked the applicant(s) all questions on this Application and these are the applicant(s) responses. To the best of my knowledge, all of the information on this Application is true, correct and complete.

| PRODUCER'S NAME: (Please Print) | Lianne Garcia | PRODUCER'S LICENSE #: | W334288 |
|---|---|---|---|
| PRODUCER'S SIGNATURE: | | | Bound Date: 5/23/2020 Time: 4:45 PM |

## IMPERIAL FIRE & CASUALTY INSURANCE COMPANY
### Driver Statement

I agree that the persons listed below of eligible driving or permit age do not reside in my household nor have regular access to drive the vehicles insured on my policy.  I understand that the Company may declare no coverage will be provided if said answers are false or misleading, and materially affect the risk the Company assumes by issuing this policy.

### Driver(s) Selection

Miranda Eumelia

Janet Lopez Lopez-Lanuza

Marsell Marsell Brito-Morales

Lorenzo A Garcia

| | |
|---|---|
| Nancy Morales | 3728 |
| Named Insured | Policy Number |
| *Nancy Morales* | 05 / 26 / 2020 |
| Signature | Date |

**Thank you for your business!**

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**

11222 (07012014)

**Imperial Fire & Casualty Insurance Company**

**PERSONAL INJURY PROTECTION OPTIONS**

| Nancy Morales | 8728 |
|---|---|
| Policyholder | Policy Number |

No-Fault Personal Injury Protection (PIP) is mandatory, but the following options are available to you to prevent duplication with other private or governmental insurance plans or benefits programs.  You should be aware that if you select an option which reduces the PIP benefits, you cannot recover from the responsible party for the amount by which benefits are reduced.

| Deductible Amount | | Named Insured Only (IO) | Named Insured and Dependent Resident Relatives (R) |
|---|---|---|---|
| ☐ | $0 | ☐ | ☐ |
| ☐ | $250 | ☐ | ☐ |
| ☐ | $500 | ☐ | ☐ |
| ☒ | $1,000 | ☐ | ☒ |

**WORK LOSS OPTION**

☐ Named Insured Only. (IO)

☒ Named Insured and Dependent Resident Relatives.(IR)

**For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction may result from these elections. There is no premium reduction if the $0 deductible is selected. The named insured is hereby advised not to elect the lost wage exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.**

| If a deductible option is elected for dependent resident relatives complete information below. | | |
|---|---|---|
| Name of dependent resident relatives | Age | Relationship |
| | | |
| | | |

In accordance with the provisions of the Florida Insurance Code, Section 627.739 which requires insurers to offer certain limitations to Personal Injury Protection Coverage, the undersigned insured does request the limitations indicated above to the Personal Injury Protection Coverage to be provided by the policy for which I/We are applying.

| *Nancy Morales* | 05 / 26 / 2020 |
|---|---|
| Signature | Date |

11477 (01012015)

Doc ID: a80375c81a0a751eb4c9335006ae9700659bfc58



PO Box 3199 ● Winston Salem, NC 27102-3199

| | |
|---|---|
| Policy Number: | 3728 |
| LOB: | **PERSONAL AUTOMOBILE** |
| Named Insured: | |
| **Nancy Morales** | |
| Policy Period: | **2:35 PM** |
| **5/23/2020 - 5/23/2021** | |
| Date of Notice: | **4/22/2022** |
| Policy Underwritten By: | |

**Imperial Fire & Casualty Insurance Company**

**24 Hour Claim Reporting: 1 -888-874-5221**

**For Policy Information: 786-581-3246**

**www.MyNatGenPolicy.com**

Nancy Morales
3620 NW 169th Ter
Miami Gardens FL 33056-4125

Your Agent

**Univista Insurance**
7330 NW 8th St
Miami FL 33126
(305) 508-9575

# FL PERSONAL AUTOMOBILE NOTICE OF RESCISSION

**RESCISSION TO TAKE EFFECT AT 12:01 AM ON 5/23/2020**

You are hereby notified that the above numbered policy has been rescinded effective the date and time noted above and no coverage shall be provided.

This action has been taken for the following specific reason:

**Material misrepresentation.  The insured failed to disclose all drivers and/or household members on the policy.**

**Florida Automobile Joint Underwriting Association Information (applicable only to policies providing Personal Automobile Liability and/or Personal Injury Protection Coverage):**

If the policy being cancelled or nonrenewed provides personal automobile liability and/or personal injury protection, you are possibly eligible for automobile insurance through another insurer or through the Florida Automobile Joint Underwriting Association. For further information regarding replacement insurance, either from another insurer or through the Association, please consult your agent or company representative. This notification of the availability of the Florida Automobile Joint Underwriting Association is given pursuant to the provisions of Section 627.728 of the Florida Statutes.

**Authorized Signature**

Exhibit "D"



PO Box 3199 ● Winston Salem, NC 27102-3199

| | |
|---|---|
| Policy Number: | 3728 |
| LOB: | **PERSONAL AUTOMOBILE** |
| Named Insured: | |
| **Nancy Morales** | |
| Policy Period: | **2:35 PM** |
| **5/23/2021 - 5/23/2022** | |
| Date of Notice: | **4/22/2022** |
| Policy Underwritten By: | |

Nancy Morales
3620 NW 169th Ter
Miami Gardens FL 33056-4125

**Imperial Fire & Casualty Insurance Company**

**24 Hour Claim Reporting: 1 -888-874-5221**
**For Policy Information: 786-581-3246**
**www.MyNatGenPolicy.com**

Your Agent
**Univista Insurance**
7330 NW 8th St
Miami FL 33126
(305) 508-9575

# FL PERSONAL AUTOMOBILE NOTICE OF RESCISSION

**RESCISSION TO TAKE EFFECT AT 12:01 AM ON 5/23/2021**

You are hereby notified that the above numbered policy has been rescinded effective the date and time noted above and no coverage shall be provided.

This action has been taken for the following specific reason:

> **Material misrepresentation.  The insured failed to disclose all drivers and/or household members on the policy.**

**Florida Automobile Joint Underwriting Association Information (applicable only to policies providing Personal Automobile Liability and/or Personal Injury Protection Coverage):**

If the policy being cancelled or nonrenewed provides personal automobile liability and/or personal injury protection, you are possibly eligible for automobile insurance through another insurer or through the Florida Automobile Joint Underwriting Association. For further information regarding replacement insurance, either from another insurer or through the Association, please consult your agent or company representative. This notification of the availability of the Florida Automobile Joint Underwriting Association is given pursuant to the provisions of Section 627.728 of the Florida Statutes.

_____
**Authorized Signature**